**Thomas Greer HODGES, Appellant,**

**v.**

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 91–1093.**

United States Court of Veterans Appeals.

Aug. 3, 1993.

John Mark Tarver, Baton Rouge, LA, was on the pleadings, for appellant.

James A. Endicott, Jr., Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Thom-

as A. McLaughlin, Deputy Asst. Gen. Counsel, and Rosalind E. Masciola, Washington, DC, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and MANKIN and HOLDAWAY, Judges.

MANKIN, Judge:

Appellant appeals an April 3, 1991, decision of the Board of Veterans' Appeals (BVA or Board) which denied an increased rating for residuals of a fracture of the sixth thoracic (T-6) vertebra (currently rated 10% disabling), denied entitlement to an increased (compensable) rating for occlusion of the right internal carotid artery, denied entitlement to a total rating based on individual unemployability, and denied entitlement to service connection for lightheadedness, vertigo, numbness of the left leg, and lumbar spine disability. On February 9, 1991, appellant filed a motion for remand to determine whether lightheadedness or other symptoms are related to his carotid artery condition. On January 28, 1992, the Secretary of Veterans Affairs (Secretary) submitted a motion for summary affirmance. The Court has jurisdiction over the case pursuant to 38 U.S.C.A. § 7252(a) (West 1991).

## I. Background

Appellant served in the United States Marine Corps from January 1973 to July 1974. In December 1973, he was injured and rendered unconscious during a motorcycle accident. Appellant was admitted to the Naval Regional Medical Center in San Diego, California, with numerous injuries to the head, neck, and back. As a result, appellant suffered episodic frontal headaches. An arteriogram showed right frontal parietal subdural hematoma and two aneurysms of the right internal carotid artery (either of two main arteries that supply blood to the head, WEBSTER'S MEDICAL DESK DICTIONARY 101 (1986)). At the time of his discharge from the hospital, appellant's only remaining problem was two false aneurysms high in the internal carotid artery. R. at 6. An angiogram performed in December 1973 again revealed two aneurysms of the right internal carotid.

In April 1974, the results of a retrograde selective right carotid study indicated that appellant's right carotid artery had spontaneously blocked without his suffering any neurologic sequelae. He began to experience intermittent symptomatic double vision which was corrected with glasses. R. at 8. A medical board determined that appellant was medically unfit for duty because he was at risk of developing a neurologic deficit if he sustained any injury to one of his unaffected cerebral vessels. R. at 9. Appellant's case was referred to the Physical Evaluation Board which found him medically unfit for service and evaluated his service-connected disabilities as 40% disabling. R. at 11–12.

In June 1974, appellant submitted an application for compensation. R. at 15. He was granted a prestabilization rating of 100%, effective July 14, 1974. In April 1975, appellant received a Veterans' Administration (now Department of Veterans Affairs) (VA) disability examination. He complained that he had experienced a "black out spell" and had difficulty breathing. An x-ray showed a normal spine with the exception of an old compression fracture of the vertebral body of T-6. The skull appeared normal. The diagnosis was "[p]ostoperative right subdural hematoma with full recovery of neurologic function secondary to head injury with basal skull fracture." R. at 35. In May 1975, appellant's 100% rating was reduced to a combined 50% rating for service-connected disabilities, effective August 1, 1975.

Appellant submitted a letter dated June 17, 1975, from R. Pierce Foster, M.D., stating that, although appellant "is generally doing remarkably well for his initial injuries," "there are few, if any, companies today that hire any personnel without a thorough physical examination," and that,

under no circumstances could I recommend appellant for employment in any capacity with his history of one of his carotid arteries being occluded, likewise his history of a neck fracture, and he could automatically be ruled out when

we picked up the compression fracture of his back on x-ray.

R. at 38. Appellant received a VA rating examination in August 1975. The Report of Medical Disability Evaluation from the examination states that appellant's condition had improved slightly since the April examination. Appellant stated that he felt well, except that he experienced throbbing in the head, a slightly sore area in the thoracic area, and slight weakness of the right wrist. Appellant's standing posture was within normal limits. Upon bending forward there was normal reversal of the lumbar curve. There was no limitation of motion of the cervical spine. R. at 39. Appellant's neurological examination findings were normal. Palpation of the spine was normal except for a prominence of the spinous process of T–6. The bony projection was not tender and showed no evidence of mobility. An x-ray of appellant's thoracic spine showed marked compression and anterior wedging of T–6 and slight infero-lateral aspect of T–6. The disc spaces above and below T–6 show relatively slight narrowing. R. at 46. The examining physician diagnosed "postoperative subdural hematoma right, with recovery and with no residual neurologic signs or symptoms, with also spontaneous occlusion of the right carotid artery secondary to false aneurysms." R. at 45. During the examination appellant stated that he did not have any particular physical problems, but that he couldn't get a job because he was ineligible for insurance coverage. R. at 43. In a decision dated May 13, 1976, the BVA denied appellant's claims for service connection for fracture of the neck, denied entitlement to an increased (compensable) evaluation for occlusion of the right internal carotid artery, and denied entitlement to a rating greater than 10% for a compression fracture of T–6 vertebra. R. at 53.

In April 1976, appellant applied to the VA for educational assistance in order to enroll in a vocational welding program. R. at 61. Appellant's application was approved. In August 1977, appellant requested a program change to enroll in a program for electronics communication.

R. at 64. In June 1980, he submitted a request for approval to enroll in an electronics correspondence course. On the request form he indicated that he had obtained employment with Texas Instruments. R. at 68. VA work history records from January 1981 show that appellant worked, either with or without compensation, continuously from September 1979 to January 1981. R. at 73. In June 1982, appellant requested another program change to study to be an electrician and indicated that he had entered into an on-the-job training agreement with Hunt Plywood Company, Inc. R. at 80. In a Statement in Support of Claim, appellant stated, "... my disabilities do not have any effect on my job performance." R. at 83.

In April 1989, appellant applied for an increased rating for a back disorder, for service connection for arthritis, secondary to his service-connected back and neck problems, and for service connection for occlusion of his right internal carotid artery (although the record shows that this disability was previously service connected at a noncompensable level as of October 1, 1975). R. at 37. Appellant claimed to suffer lightheadedness and vertigo as a result of the occlusion and complained of numbness of his left leg. He also requested consideration of his claim for individual unemployability. R. 85. Along with his statement in support of claim appellant submitted a letter from the Port Allen Marine Service informing appellant that he did not pass a preemployment physical examination because an an x-ray of his back showed degenerative disc disease at L–3 and L–4. R. at 92.

In May 1989, appellant was examined by the VA for the purpose of determining whether his claimed disabilities were related to his service-connected disabilities or were connected to the 1973 motorcycle accident. Charles Van Oppen, M.D., stated his opinion that "[t]he disability of 'light headedness' could be related to the occlusion of internal carotid artery." R. at 100. Hollis Reed, M.D., who also examined appellant, concluded that appellant's lightheadedness was not the result of an audiogenic injury.

A CAT scan showed no significant abnormality. R. at 103.

The Regional Office (RO) denied appellant's claims for an increased rating for his service-connected compression fracture and for occlusion of the right internal carotid artery. Service connection was granted for arthritis of the thoracic spine as secondary to the compression fracture. Lightheadedness, vertigo, and left leg numbness were found to be symptoms without etiological diagnoses and were determined to be unrelated to appellant's service-connected disabilities. Entitlement to individual unemployability was also denied. R. at 111. Appellant filed a Notice of Disagreement on July 27, 1989. R. at 114. He perfected his appeal to the BVA and requested a personal hearing, which was held on September 13, 1989. The hearing officer issued a decision on May 22, 1989, confirming the RO's denial of appellant's claims. In support of his unemployability claim appellant submitted a letter from Edward M. Harrell, M.D., stating that in November 1989 appellant was rejected for employment as a rig technician "because of a history of degenerative disc disease of L–3 [and] L–4 [and] compression fracture of T–6, splenectomy and subdural hematoma." R. at 157–158. A VA disability evaluation was conducted in November 1989. R. at 160. No neurological changes were apparent. An x-ray of appellant's back showed marked compressive change around T–6 with bony growth around T4–5 and T5–6. On April 3, 1991, the BVA denied appellant's claims in the decision now on appeal before the Court.

## II. ANALYSIS

### A.

■ The Court must affirm the BVA's factual determinations unless they are found to be "clearly erroneous." 38 U.S.C.A. § 7261(a)(4) (West 1991); *see Lovelace v. Derwinski*, 1 Vet.App. 73 (1990); *Gilbert v. Derwinski*, 1 Vet.App. 49, 52–53 (1990). In determining whether a finding is clearly erroneous, "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA ... we cannot overturn them." *Gilbert*, 1 Vet.App. at 53.

In its decision the Board denied service connection for lightheadedness, vertigo, and left leg numbness because the record revealed no etiological basis for these complaints. Service connection for a lumbar spine disability was denied because the Board found that degenerative disc disease was not diagnosed until 1989 and determined that the evidence of record did not show that was condition is reasonably related to service. The Board applied the applicable rating criteria to determine whether appellant was entitled to an increased rating for residuals of a fracture of the spine and to a compensable rating for a service-connected occlusion of the right internal carotid artery. After reviewing the records from recent medical examinations, in addition to other evidence of record, the Board applied the applicable rating criteria and concluded that the maximum evaluations had been awarded. Although there is evidence in the record which contradicts the BVA's findings, the Court holds that there is a plausible basis for the BVA's determinations with regard to the above claims. The Court is also satisfied that the BVA's decision as to these claims satisfies the "reasons or bases" requirements of 38 U.S.C.A. § 7104(d)(1) (West 1991) and the benefit of the doubt doctrine of 38 U.S.C.A. § 5107(b) (West 1991).

### B.

■ An unemployability rating is based primarily upon the average impairment in earning capacity. 38 C.F.R. § 4.15 (1992). "Total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation." *Id.; see also* 38 C.F.R. § 3.340(a) (1992). Entitlement to individual unemployability must be established solely on the basis of impairment arising from service-connected disorders. 38 C.F.R. § 3.341(a) (1992);

*Blackburn v. Brown,* 4 Vet.App. 395, 398 (1993). Since October 1, 1975, appellant has been in receipt of a combined 50% rating for thoracic spine disorder, occluded right internal carotid artery, and numerous additional disabilities.

The established VA policy is that "all veterans who are unable to *secure* and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated as totally disabled." 38 C.F.R. § 4.16(b) (emphasis added); *Fanning v. Brown,* 4 Vet.App. 225, 229 (1993); *Moyer v. Derwinski,* 2 Vet.App. 289, 294 (1992). In the instant case the Board found:

> In order to warrant a favorable determination of this issue, the evidence must show that the veteran is unable to *undertake* any form of substantially gainful employment because of the severity of his service-connected disabilities.

*Thomas G. Hodges,* BVA 90–31445, at 7 (April 3, 1991) (emphasis added). The medical report from the Medical Evaluation Board reveals that appellant was discharged from service because of the possibility that an injury to his carotid arteries could cause neurological damage. R. at 9. At the September 1989 hearing appellant stated,

> [E]very doctor I've ever talked to has said that this is serious business, and that you only have four [arteries] going to your brain, and I've got three which means I haven't got as much oxygen going to my brain and if anything happens to one of the others, that I was dead....

Dr. Pierce stated that he could not recommend appellant for employment due to his carotid artery condition. Dr. Harrell confirmed that appellant was rejected for employment, at least in part, for his service-connected compression fracture and for splenectomy and subdural hematoma residuals which are also service-connected conditions.

■ The evidence of record indicates that, although appellant has received vocational training and is able to follow or *undertake* employment despite his service-connected disabilities, he is unable to *secure* employment because of his physical disabilities. Thus, appellant is, in effect, unemployable. Section 4.16 requires that the BVA determine whether the occlusion of appellant's right carotid artery, his service-connected back disability, or one of his other service-connected conditions effectively precludes him from securing substantially gainful employment. Although appellant's service-connected carotid artery disability is noncompensable, that fact alone is not a bar to an award of a total rating based on unemployability.

### III. CONCLUSION

After considering the evidence of record and the arguments advanced by the parties, it appears that remand is the appropriate remedy. It is not the function of this Court to determine in the first instance whether an appellant is entitled to individual unemployability or to assign a rating; "rather, it is the function of this Court to decide whether such factual determinations made by the BVA in a particular case constituted clear error." *Gilbert,* 1 Vet.App. at 53. On remand the BVA shall issue a new decision which will include a statement of reasons or bases as required by 38 U.S.C.A. § 7104(d)(1), and which shall include consideration of the impact of appellant's service-connected disabilities, both alone and in combination with his other service-connected disabilities, on his ability to secure and follow a substantially gainful occupation. *Goodman v. Derwinski,* 1 Vet.App. 280, 282 (1991); *see* 38 C.F.R. § 4.16(a). The Court VACATES the BVA's decision denying entitlement to individual unemployability and REMANDS this matter for readjudication consistent with this opinion. The remainder of the BVA's decision is AFFIRMED. Accordingly, appellant's motion for remand of his claims for service connection and an increased rating for occluded right carotid artery is denied. The Secretary's motion for summary affirmance is granted in part and denied in part.