Citation Nr: 1434269 
Decision Date: 07/31/14 Archive Date: 08/04/14

DOCKET NO. 10-31 016 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES

1. Entitlement to an effective date earlier than July 31, 2002, for the award of a 60 percent evaluation for residuals of a tendon graft of the fifth finger of the right hand.

2. Entitlement to an effective date earlier than July 31, 2002, for the award of a total rating based on individual employability due to service-connected disability (TDIU).

3. Entitlement to an effective date earlier than July 31, 2002, for the award of Dependents' Educational Assistance (DEA) benefits.

4. Entitlement to an effective date earlier than July 31, 2002, for the award of special monthly compensation (SMC) based on loss of use of the right hand.


REPRESENTATION

Appellant represented by: Virginia A. Girard-Brady, Attorney at Law

ATTORNEY FOR THE BOARD

L. Barstow, Counsel


INTRODUCTION

The Veteran had active military service from February 1972 to May 1974.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from February 2009, January 2010, and August 2010 rating decisions of the VA Regional Office (RO) in Nashville, Tennessee. 

The case was remanded in December 2012 to provide the Veteran with notice of how VA assigns effective dates. Review of the record indicates substantial compliance. See Stegall v. West, 11 Vet. App. 268, 271 (1998).


FINDINGS OF FACT

1. The Veteran's current claim for an increased rating for residuals of a tendon graft of the fifth finger of the right hand was received on November 22, 1996.

2. The evidence of record first demonstrates that on July 31, 2002, it was factually ascertainable that an increase in disability occurred so that the Veteran became entitled to a 60 percent disability rating for his residuals of a tendon graft of the fifth finger of the right hand.

3. Prior to July 31, 2002, the Veteran was only service-connected for residuals of a tendon graft of the fifth finger of the right hand, evaluated as 40 percent disabling. 

4. Effective July 31, 2002, the disability evaluation for the right finger disability was increased to 60 percent. 

5. Prior to July 31, 2002, the Veteran did not meet the schedular rating for the award of a TDIU; his service-connected disability of residuals of a tendon graft of the fifth finger of the right hand did not preclude him from obtaining or retaining substantially gainful employment.

6. Prior to July 31, 2002, the evidence did not show that the Veteran's service-connected right finger disability resulted in the loss of use of the right hand. 


CONCLUSIONS OF LAW

1. The criteria for an effective date earlier than July 31, 2002, for the award of a 60 percent rating for residuals of a tendon graft of the fifth finger of the right hand have not been met. 38 U.S.C.A. §§ 5101, 5103, 5107, 5110 (West 2002); 38 C.F.R. §§ 3.151, 3.155, 3.400 (2013).

2. The criteria for an effective date earlier than July 31, 2002, for the award of a TDIU have not been met. 38 U.S.C.A. §§ 5101, 5103, 5107, 5110 (West 2002); 38 C.F.R. §§ 3.151, 3.155, 3.400 (2013).

3. The criteria for an effective date earlier than July 31, 2002, for the award of DEA benefits have not been met. 38 U.S.C.A. § 5110 (West 2002); 38 C.F.R. §§ 3.151, 3.155, 3.400 (2013).

4. The criteria for an effective date earlier than July 31, 2002, for the award of SMC based on loss of use of the right hand have not been met. 38 U.S.C.A. § 5110 (West 2002); 38 C.F.R. §§ 3.151, 3.155, 3.400, 3.350(a) (2013).



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. VA's Duties to Notify and Assist

The VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 & 3.326(a) (2013). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his representative of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). The notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. Such notice should be provided to a claimant before the initial unfavorable agency of original jurisdiction (AOJ) decision on a claim. Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

The Veteran was notified in letters dated in August 2006, July 2007, and March 2013 regarding the type of evidence necessary to establish his claims. The Veteran was notified of what evidence and/or information was already in the RO's possession, what additional evidence and/or information was needed from the Veteran, what evidence VA was responsible for getting, and what information VA would assist in obtaining on the Veteran's behalf. The letters notified the Veteran of the criteria for assigning a disability rating and an effective date. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

The Veteran's earlier effective date claims arise from his disagreement with the effective dates assigned following the increase in disability ratings and awards of additional benefits. Courts have held that once service connection is granted the claim is substantiated, additional notice is not required and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). Regardless, the letters informed the Veteran of the criteria for an effective date. See Dingess/Hartman, 19 Vet. App. 473.

Regarding VA's duty to assist, VA obtained the Veteran's post-service medical records, Social Security Administration (SSA) records and also secured examinations in furtherance of his claims. Pertinent VA examinations were obtained in April 1997, June 1999, July 2002, January 2003, and January 2008. 38 C.F.R. § 3.159(c)(4). The VA examinations obtained in this case are sufficient, as the examiners conducted a complete examination, recorded all findings considered relevant under the applicable law and regulations, and offered well supported opinions based on consideration of the full history of the disorders. The Board finds that VA's duty to assist the Veteran with respect to obtaining a VA examination concerning the issues adjudicated herein has been met. 38 C.F.R. § 3.159(c)(4). 

II. Analysis

The general rule regarding effective dates is that the effective date of an evaluation and award of compensation based on an original claim, a claim re-opened after final disallowance, or a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is the later. 38 C.F.R. § 3.400 (2013).

A specific claim in the form prescribed by the Secretary of Veterans Affairs must be filed in order for benefits to be paid to any individual under the laws administered by VA. 38 C.F.R. § 3.151 (2013). The term "claim" or "application" means a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief of entitlement, to a benefit. 38 C.F.R. § 3.1(p) (2013). "Date of receipt" generally means the date on which a claim, information, or evidence was received by VA. 38 C.F.R. § 3.1(r). 

Any communication or action, indicating an intent to apply for one or more benefits under the laws administered by VA, from a claimant, his or her duly authorized representative, a Member of Congress, or some person acting as next friend of a claimant who is not sui juris may be considered an informal claim. Such an informal claim must identify the benefit sought. Upon receipt of an informal claim, if a formal claim has not been filed, an application form will be forwarded to the claimant for execution. If received within one year after the date it was sent to the claimant, it will be considered filed as of the date of receipt of the informal claim. 38 C.F.R. § 3.155(a).

The United States Court of Appeals for Veterans Claims (Court) has held that a request for TDIU is not a separate claim for benefits, but rather involves an attempt to obtain an appropriate rating for a disability or disabilities, either as part of the initial adjudication of a claim or, if a disability upon which entitlement to TDIU is based has already been found to be service connected, as part of a claim for increased compensation. Rice v. Shinseki, 22 Vet. App. 447, 453 (2009). If the claimant or the record reasonably raises the question of whether the Veteran is unemployable due to the disability for which an increased rating is sought, then part of the claim for an increased rating is whether a total rating based on individual unemployability as a result of that disability is warranted. Id. at 455. Also, in Mayhue v. Shinseki, 24 Vet. App. 273, 281 (2011), the Court held that a request for entitlement to a TDIU is part of an initial application for benefits, and the Board is required to consider evidence of unemployability as far back as the date of the underlying initial claim.

Under 38 C.F.R. § 3.400(o)(2), the effective date of an award of increased disability compensation shall be the earliest date as of which it is factually ascertainable that an increase in disability had occurred, if application is received within one year from such date; otherwise, the effective date will be the date of VA receipt of the claim for increase, or the date entitlement arose, whichever is later. Id.; see also 38 U.S.C.A. § 5110(a),(b)(2); Hazan v. Gober, 10 Vet. App. 511 (1997); Harper v. Brown, 10 Vet. App. 125 (1997).

The Court has held that 38 U.S.C.A. § 5110(b)(2) and 38 C.F.R. § 3.400(o)(2) are applicable only where an increase in disability precedes a claim for an increased disability rating; otherwise the general rule of 38 C.F.R. § 3.400(o)(1) applies. See Harper at 126. Thus, three possible dates may be assigned depending on the facts of the case:

(1) if an increase in disability occurs after the claim is filed, the date that the increase is shown to have occurred (date entitlement arose) (38 C.F.R. § 3.400(o)(1));

(2) if an increase in disability precedes the claim by a year or less, the date that the increase is shown to have occurred (factually ascertainable) (38 C.F.R. § 3.400(o)(2));

(3) if an increase in disability precedes the claim by more than a year, the date that the claim is received (date of claim) (38 C.F.R. § 3.400(o)(2)).

Harper, 10 Vet. App at 126. Thus, determining an appropriate effective date for an increased rating under the effective date regulations involves an analysis of the evidence to determine (1) when a claim for an increased rating was received and, if possible, (2) when the increase in disability actually occurred. 38 C.F.R. §§ 3.155, 3.400(o)(2). 

1. Increased Rating for Residuals of a Tendon Graft of the Fifth Finger of the Right Hand

Here, following a Board grant of an increased rating in a January 2009 decision, the RO assigned an effective date of July 31, 2002, the date of a VA examination showing that the Veteran's disability approximated the 60 percent rating criteria. Based on a review of the evidence, the Board concludes that an effective date earlier than July 31, 2002, is not warranted.

Service connection was originally granted in a July 1975 rating decision in which the disability was evaluated as zero percent disabling. The Veteran did not appeal the disability rating; the July 1975 rating decision is final. The Veteran filed an increased rating claim in September 1983 and a 10 percent rating was assigned in an October 1983 rating decision, which the Veteran also did not appeal and is final. An additional increased rating claim was denied in an unappealed July 1985 administrative decision. Following an increased rating claim in April 1994, the RO granted a 30 percent rating in a September 1994 rating decision. That decision also was not appealed and is final. Another increased rating claim was filed in January 1995, which the RO denied in July 1995. A timely notice of disagreement was filed and a statement of the case, as well as a rating decision increasing the disability rating to 40 percent, was issued in April 1996. The Veteran subsequently filed the increased rating claim for the current appeal on November 22, 1996. The RO issued a supplemental statement of the case in June 1997. In July 1997, the Veteran filed his substantive appeal for the July 1995 rating decision. In October 1997, the RO informed the Veteran that his substantive appeal was not timely; the Veteran did not appeal the timeliness issue. As such, the Board concludes that the July 1995 rating decision is also final. 

In finding that July 1975, October 1983, July 1985, September 1994, and July 1995 rating decisions are final, the Board is cognizant of the holding of the United States Court of Appeals for the Federal Circuit (Federal Circuit) in Bond v. Shinseki, 659 F.3d 1362 (2011). In that case, the Federal Circuit found that 38 C.F.R. § 3.156(b) requires that VA evaluate submissions during relevant time periods to determine whether they contain new and material evidence relevant to a pending claim, even if the new submission may support a new claim. Bond v. Shinseki, 659 F.3d 1362. Here, no additional evidence pertinent to the issue of the severity of the Veteran's fifth finger disability of the right hand was received within the appeal period of the July 1975, October 1983, and July 1985 rating decisions. To the extent that additional evidence was received within the relevant time to appeal the September 1994 rating decision, such evidence was considered in the July 1995 rating decision. Although the Veteran filed a timely notice of disagreement with the July 1995 decision, no such notice was filed as to the September 1994 decision; the Veteran's January 1995 claim specifically did not disagree with the September 1994 decision. As discussed above, the Veteran's substantive appeal in 1997 was not timely and the Veteran did not appeal the timeliness issue. Therefore, the July 1975, October 1983, July 1985, September 1994, and July 1995 rating decisions are final. As such, entitlement to an earlier effective date for a 60 percent rating for residuals of a tendon graft of the fifth finger of the right hand is not warranted on this basis.

The evidence also does not show, nor does the Veteran contend, that an informal or formal claim for an increase not finally decided in a rating decision was filed prior to November 22, 1996. A review of the claims file fails to show that any claim was received between the July 1995 rating decision last adjudicating an increased rating claim and the November 22, 1996 claim. As no claim was filed prior to November 22, 1996, an earlier effective date based on an earlier claim is not warranted.
As the July 1995 rating decision is final and as no claim was received prior to November 22, 1996, the Board will consider whether an effective date earlier than July 31, 2002, can be granted based on medical evidence of record within the one year period prior to November 22, 1996, showing that the 60 percent rating was warranted. In this case, the pertinent evidence fails to show that the Veteran's right finger disability warranted a rating of 60 percent prior to July 31, 2002. 

The Veteran's treatment records and VA examinations from November 22, 1995, to July 30, 2002, fail to show he met the criteria for a 60 percent rating under the applicable diagnostic code. This disability is rated under 38 C.F.R. § 4.124a, Diagnostic Code (DC) 8516, which evaluates impairment from paralysis of the ulnar nerve. 38 C.F.R. § 4.124a, DC 8516 (2013). A 30 percent rating for the major extremity is warranted when there is moderate incomplete paralysis. Id. A 40 percent rating for the major extremity is warranted when there is severe incomplete paralysis. Id. A 60 percent rating for the major extremity is warranted when there is complete paralysis consisting of the "griffin claw" deformity, due to flexor contraction of ring and little fingers, atrophy very marked in dorsal interspace and thenar and hypothenar eminences; loss of extension of ring and little fingers cannot spread the fingers (or reverse), cannot adduct the thumb; flexion of wrist weakened. Id.

Treatment records and examinations prior to the July 31, 2002, VA examination fail to show that the Veteran had the symptomatology more nearly approximating a 60 percent rating. 

A VA treatment record dated August 1996 shows that the Veteran reported that his middle and ring fingers were now "drawing up." He also reported increased pain and increased dysthesia of the right hand. 

The Veteran was afforded a VA examination in April 1997. He reported increased pain, numbness, and drawing of right middle, ring and little fingers. He also reported a history of dropping objects and having difficulty in using his right hand in buttoning his shirts occasionally. He had been working full-time as a computer programmer the past five years. Examination revealed no evidence of hypersensitivity of skin of the right hand to touch or deep palpation. Temperature was the same as the left hand and there was no muscle atrophy noted. There was decreased pinprick sensation in the ulnar nerve distribution. Muscle testing was normal except fair right grasp and fair plus right finger abductors. There was a flexion contracture deformity of the right little finger. The distal interphalangeal (DIP) joint was fixed at 20 degrees flexion. Range of motion of the proximal interphalangeal (PIP) joint of the right little finger was extension to negative 70 degrees and flexion from zero to 95 degrees. Range of motion of the metacarpophalangeal (MCP) joint of the right little finger and of the other joints of the right hand were normal. He was able to make a complete fist on the right but not tight in comparison to the left. Opposition of right thumb to other fingers was normal. Abduction of the right little finger was 30 degrees compared to 40 degrees on the left. Froment's sign was negative. 

The examiner noted that electrodiagnostic studies in February 1997 were suggestive of old right ulnar nerve sensory fiber lesion and that the Veteran was advised to use his right hand for functional activities as much as possible. The examiner diagnosed the Veteran, in pertinent part, with limited range of motion of the right little finger with flexion contracture deformities of DIP and PIP joint, right little finger and pain of right hand with weakness. The examiner opined that the Veteran had weakness which could be secondary to decreased use of the right hand for functional purpose and pain. The examiner commented that the Veteran had pain and weakness with flexion contracture deformity of the right little finger and limited range of motion of the right little finger. The examiner reported that that resulted in decreased functional use of the right hand for strenuous activities or repetitive activities. The examiner noted that they did not see any difficulty in the Veteran buttoning his shirt during examination. 

At VA examinations in June 1999, the Veteran reported pain and that he could extend fingers one through four, but five would not extend. Examination of the right fifth digit revealed flexion to 35 degrees and that it was frozen in that position at the PIP; at the DIP, it was frozen to 16 degrees. In addition to the Veteran's service-connected disability, he was diagnosed with carpal tunnel syndrome, which is not service-connected. At the peripheral nerves examination, the Veteran reported dropping things and that his right hand was generally maintained in a flexed position. Examination revealed that his third, fourth and fifth fingers were maintained in a flexed position. There was no atrophy of the right first dorsal interosseous muscle. He had full strength of his right abductor pollicis brevis muscle and of wrist extension. Otherwise, his motor strength was full throughout. Sensation was intact to pinprick, light touch, vibration and joint position sense except for some patchy numbness on the sides of some of the fingers. The examiner noted that the numbness did not fully conform to an ulnar distribution numbness. The examiner opined that the Veteran's use of his right hand was severely limited from an orthopedic standpoint. 

The Veteran was afforded a VA examination on July 31, 2002. He reported trouble with almost any kind of physical activity involving his right hand, as well as great difficulty using a computer at his place of employment. Examination revealed atrophy of the fifth digit; and flexion deformity of his fourth and fifth digits, and also somewhat of his third digit. There was markedly decreased sensation, decreased temperature, decreased light touch and decreased pinprick sensation. Deep tendon reflexes were present. The examiner opined that "for practical purposes, he is nearly completely disabled in the sense that he cannot use his right hand." 

In a January 2009 decision, the Board concluded that the Veteran met the criteria for a 60 percent rating under DC 8516. In its decision, the Board noted that since at least July 2002, the Veteran had been essentially unable to use his dominant hand. In effectuating the Board's grant, the RO assigned an effective date of July 31, 2002, the date of the VA examination showing that the Veteran was nearly completely disabled in use of his right hand. 

In this case, the Veteran's treatment records and VA examinations in 1997 and 1999 fail to show that he met the criteria for a 60 percent rating. Unlike the July 2002 examination, the earlier VA examinations did not reveal any atrophy. The June 1999 peripheral nerves examiner specifically noted that the Veteran did not have atrophy of the right first dorsal interosseous muscle. The Veteran was also able to make a full fist in 1997 and he reported to one of the VA examiners in 1999 that he could extend fingers one through four. Although his third, fourth and fifth fingers were maintained in a flexed position at the peripheral nerves examination in 1999, the Board reiterates that he reported being able to extend his fingers to the other VA examiner. Furthermore, the peripheral nerves examiner reported that the Veteran had full strength of his right abductor pollicis brevis muscle and of wrist extension. While the July 31, 2002, examiner opined that the Veteran was completely disabled in the use of his right hand, the 1997 examiner noted no difficulty in the Veteran buttoning his shirt at the examination and the 1999 examiner opined that the Veteran's disability was only severe. As noted above, severe incomplete paralysis warranted the assigned 40 percent rating prior to July 31, 2002. Even if the Veteran's disability did approximate "griffin claw" deformity prior to July 31, 2002, the evidence fails to show that the Veteran's disability resulted in complete paralysis manifested by other symptomatology approximating that level of disability as set forth in the rating criteria. 

The Veteran's treatment records and VA examinations prior to July 31, 2002, fail to show symptomatology warranting a 60 percent rating for the reasons set forth above. Although the Veteran's claim was received on November 22, 1996, the effective date assigned in this case is the date that the increase is shown to have factually occurred, July 31, 2002. Therefore, an earlier effective date based on evidence showing that an increase in disability had occurred prior to July 31, 2002, is not warranted.

While the Board recognizes the Veteran's belief that the effective date for the award of a 60 percent rating for residuals of a tendon graft of the fifth finger of the right hand should be earlier than July 31, 2002, the governing legal authority is clear and specific, and VA is bound by it. As the preponderance of the evidence is against the Veteran's claim, the benefit-of-the-doubt rule does not apply, and the Veteran's claim of entitlement to an effective date earlier than July 31, 2002, for the award of a 60 percent rating for residuals of a tendon graft of the fifth finger of the right hand is denied. See 38 U.S.C.A §5107 (West 2002 & Supp. 2013).

 2. TDIU

Here, the RO assigned an effective date of July 31, 2002, the date that the 60 percent rating was awarded for the Veteran's only service-connected right finger disability. For the reasons set forth above, an effective date earlier than July 31, 2002, for the award of the 60 percent rating is not warranted. Prior to July 31, 2002, the Veteran's only service-connected disability was evaluated as 40 percent disabling. 

The schedular requirements for TDIU require that if there is only one service-connected disability, this disability should be rated at 60 percent or more; if there are two or more disabilities, at least one should be rated at 40 percent or more with sufficient additional service-connected disability to bring the combination to 70 percent or more. 38 C.F.R. § 4.16(a). Therefore, the Veteran met the schedular requirements for TDIU on July 31, 2002. 

In light of Rice and Mayhue, the Board concludes that the Veteran has had a claim pending since November 22, 1996, the date his claim for an increased rating was received. The effective date of an evaluation and award of compensation for an increased rating claim is the date of receipt of the claim or the date entitlement arose, whichever is the later. 38 U.S.C.A. § 5110(a); 38 C.F.R. § 3.400(o)(1) (emphasis added). In this case, July 31, 2002, is the later date. 38 C.F.R. § 3.400(o)(1). 

However, to determine if an earlier effective date is warranted, the Board must consider whether the Veteran met the criteria for an award of a TDIU earlier than July 31, 2002. As discussed above, the Veteran did not meet the schedular requirements for a TDIU until July 31, 2002. It is also the policy of the VA, however, that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. 38 C.F.R. § 4.16(b). Where the veteran fails to meet the applicable percentage standards enunciated in 38 C.F.R. § 4.16(a), an extraschedular rating is for consideration where the veteran is unemployable due to service-connected disability. 38 C.F.R. § 4.16(b); see also Fanning v. Brown, 4 Vet. App. 225 (1993). Thus, the Board must evaluate whether there are circumstances in the Veteran's case, apart from any nonservice-connected conditions and advancing age, which would justify a total rating, based on unemployability. Van Hoose, 4 Vet. App. at 363; see also Hodges v. Brown, 5 Vet. App. 375 (1993); Blackburn v. Brown, 4 Vet. App. 395 (1993). 

The fact that a veteran may be unemployed or has difficulty obtaining employment is not determinative. The ultimate question is whether the veteran, because of service-connected disability, is incapable of performing the physical and mental acts required by employment, not whether he can find employment. Van Hoose, 4 Vet. App. at 363. Moreover, as already noted, an inability to work due to non-service-connected disabilities or age may not be considered. 38 C.F.R. §§ 4.14, 4.19. In making its determination, VA considers such factors as the extent of the service-connected disabilities, and employment and educational background. 38 C.F.R. §§ 3.321(b), 3.340, 3.341, 4.16(b), 4.19. 

A review of the evidence does not show that the Veteran's service-connected disability prior to July 31, 2002, rendered him unemployable. Indeed, the evidence shows that the Veteran was gainfully employed until well after July 31, 2002. Records from the Veteran's last employer show that he went on medical leave in 2003. The Veteran's SSA records show that he filed for benefits after July 31, 2002; the decision awarding him benefits reveals that he was found disabled from March 2004. Moreover, the Veteran's own representative in an October 2009 statement indicated that the evidence of record "clearly reflects that the [V]eteran became unemployed in March 2004." The representative requested that a TDIU be granted effective March 15, 2004. No medical professional provided any opinion that the Veteran was unemployable prior to July 31, 2002. In this case, considering that the Veteran's employment records, SSA records, and his representative's own arguments show that he was gainfully employed until well after July 31, 2002, the Board concludes that an earlier effective date for the award of a TDIU is not warranted. 

In sum, prior to July 31, 2002, the Veteran did not meet the criteria for a schedular TDIU, he was gainfully employed, and the medical evidence does not indicate that the Veteran was unemployable due to his only service-connected right finger disability. Therefore, while the Veteran contends that the effective date for the grant of TDIU should be earlier than July 31, 2002, the record presents no evidentiary basis for the assignment of an earlier effective date. The governing legal authority is clear and specific and VA is bound by it. As the preponderance of the evidence is against the Veteran's claim, the benefit-of-the-doubt rule does not apply, and the Veteran's claims of entitlement to an effective date earlier than July 31, 2002, for the award of a TDIU is denied. See 38 U.S.C.A §5107.

 3. DEA Benefits

Basic eligibility for DEA benefits under Chapter 35 exists where the veteran was discharged from service under conditions other than dishonorable and has a total disability permanent in nature as a result of a service-connected disability. 38 U.S.C.A. § 3501(a)(1); 38 C.F.R. § 3.807(a). With certain exceptions that are not applicable here, the effective date for the grant of such award shall, to the extent feasible, correspond to effective dates for awards of disability compensation. 38 U.S.C.A. § 5113(a). 

A total disability may be assigned where the veteran's service-connected disabilities are rated 100 percent disabling under the rating schedule, or if the veteran is unemployable due to service-connected disabilities. 38 C.F.R. §§ 3.340, 3.341 (2013). 

As discussed above, the Veteran was awarded a TDIU effective from July 31, 2002. The currently assigned effective date of July 31, 2002, for eligibility for DEA benefits was directly related to the award of a TDIU. For the reasons set forth above, an earlier effective date for the award of a TDIU is not warranted. 

Therefore, based on a review of the evidence, the Board concludes that an effective date earlier than July 31, 2002, for the award of DEA benefits is not warranted. For purposes of DEA benefits under 38 U.S.C. Chapter 35, the law relevant to the Veteran's current claim provides that basic eligibility exists if the Veteran was discharged from service under conditions other than dishonorable and if he has a permanent and total service-connected disability. 38 U.S.C.A. § 3501; 38 C.F.R. §§ 3.807, 21.3021 (2013). 

As the Board has concluded that the Veteran did not meet the criteria for a TDIU prior to July 31, 2002, the assignment of an effective date prior to that time for the eligibility for DEA benefits is not warranted. Since eligibility for DEA benefits under 38 U.S.C. Chapter 35 is predicated on a finding of a 100 percent disability rating, the effective date of such eligibility cannot precede July 31, 2002, the date that the Veteran was awarded a total disability rating due to his unemployability. 

In sum, the earliest effective date that the Veteran met the criteria for eligibility to DEA benefits is July 31, 2002. Therefore, while the Veteran contends that the effective date should be earlier than July 31, 2002, the record presents no evidentiary basis for the assignment of an earlier effective date. The governing legal authority is clear and specific and VA is bound by it. As the preponderance of the evidence is against the Veteran's claim, the benefit-of-the-doubt rule does not apply, and the Veteran's claim of entitlement to an effective date earlier than July 31, 2002, for the award of DEA benefits is denied. See 38 U.S.C.A §5107.

 4. SMC

SMC is a special statutory award, in addition to awards based on the schedular evaluations provided by the diagnostic codes in VA's rating schedule. The effect of the loss of use of hand is detailed in 38 C.F.R. § 4.63 (2013); see also 38 C.F.R. § 3.350 (2013). Specifically, this regulation provides that loss of use of a hand, for the purpose of SMC, will be held to exist when no effective function remains other than that which would be equally well served by an amputation stump at the site of election below elbow with use of a suitable prosthetic appliance. The determination will be made on the basis of the actual remaining function of the hand, whether the acts of grasping, manipulation, etc., could be accomplished equally well by an amputation stump with prosthesis. 

As discussed above, the Veteran was awarded a 60 percent disability rating for his right finger disability, effective from July 31, 2002, due to the finding of complete paralysis. The July 31, 2002, VA examiner is the first medical professional to opine that the Veteran was "nearly completely disabled in the sense that he cannot use his right hand." As already discussed in denying an earlier effective date for the award of a 60 percent rating, the evidence fails to show that the Veteran's right finger disability met the criteria for a 60 percent rating based on complete paralysis. The evidence as discussed above prior to July 31, 2002, fails to show that the Veteran's right finger disability effectively resulted in the loss of use of his right hand. Therefore, the evidence fails to show that the Veteran met the criteria for the award of special monthly compensation based on loss of use of the right hand prior to July 31, 2002. 

Based on a review of the evidence, the Board concludes that an effective date earlier than July 31, 2002, is not warranted. For the reasons set forth above, the Board concludes that an earlier effective date for the award of a 60 percent rating is not warranted, and that the evidence fails to show that the Veteran's disability resulted in no effective function remaining other than that which would be equally well served by an amputation stump at the site of election below elbow with use of a suitable prosthetic appliance. As such, the earliest date that the Veteran met the criteria for the award of special monthly compensation based on loss of use of the right hand is July 31, 2002. 

In sum, the earliest effective date that the Veteran met the criteria for special monthly compensation based on loss of use of the right hand is July 31, 2002. Therefore, while the Veteran contends that the effective date should be earlier than July 31, 2002, the record presents no evidentiary basis for the assignment of an earlier effective date. The governing legal authority is clear and specific and VA is bound by it. As the preponderance of the evidence is against the Veteran's claim, the benefit-of-the-doubt rule does not apply, and the Veteran's claim of entitlement to an effective date earlier than July 31, 2002, for the award of SMC based on housebound criteria is denied. See 38 U.S.C.A §5107.


ORDER

Entitlement to an effective date earlier than July 31, 2002, for the award of a 60 percent evaluation for residuals of a tendon graft of the fifth finger of the right hand is denied.

Entitlement to an effective date earlier than July 31, 2002, for the award of a TDIU is denied.

Entitlement to an effective date earlier than July 31, 2002, for the award of DEA benefits is denied.

Entitlement to an effective date earlier than July 31, 2002, for the award of SMC based on loss of use of the right hand is denied.



____________________________________________
MILO H. HAWLEY 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs