﻿Citation Nr: AXXXXXXXX
Decision Date: 10/31/19 Archive Date: 10/31/19

DOCKET NO. 190502-8956
DATE: October 31, 2019

ORDER

Entitlement to an earlier effective date of June 28, 2010, for the award of a total disability individual unemployability (TDIU) is granted. 

FINDINGS OF FACT

1. The Veteran informed VA that wished to file a claim for service connection for PTSD on June 28, 2010.

2. The Veteran’s formal claim for service connection for PTSD (VA Form 21-526b) was received in July 2010.

3. Beginning on and after June 28, 2010, the Veteran’s service-connected PTSD symptoms more nearly approximated a disability picture manifest by psychiatric symptoms causing occupational and social impairment, with deficiencies in most areas.

4. From June 28, 2010 to February 4, 2011, service connection was in effect for PTSD, rated as 70 percent disabling and migraine headaches associated with PTSD with alcohol and cannabis abuse (with claimed symptoms of anxiety, depression, trouble sleeping, nightmares, and flashbacks), rated as 50 percent disabling. Therefore, beginning on and after June 28, 2010, the Veteran met the schedular criteria for TDIU. 

5. There is competent evidence of record that the Veteran’s service-connected disabilities rendered him unable to obtain or maintain substantially gainful employment beginning on and after June 28, 2010.

CONCLUSION OF LAW

Beginning June 28, 2010, but no sooner, the criteria for TDIU have been met. 38 U.S.C. §§ 1155, 5110, 5111; 38 C.F.R. §§ 3.340, 3.341, 4.15, 4.16.

REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veteran served as a member of the United States Navy, with active duty service from April 1989 to April 1993.

This appeal comes to the Board of Veterans’ Appeals (Board) from a rating decision, dated March 2019, issued by the Department of Veterans Affairs (VA) Regional Office (RO). In its decision, the RO granted entitlement to individual unemployability effective February 4, 2011. The Veteran timely appealed.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. In January 2019, the Veteran submitted a VA Form 10182 election form, selecting the Direct Review lane for his appeal.

The Board notes that the Veteran had a pending hearing scheduled; however, the Veteran withdrew his request for a hearing under RAMP in February 2019. See Statement of the Case dated March 2016. Therefore, as the Veteran did not request a new hearing, the Board notes that he no longer has a pending hearing request.

Entitlement to an earlier effective date for the award of a TDIU 

The Veteran seeks entitlement to an earlier effective date for the award of a TDIU. The Veteran was initially awarded entitlement to a TDIU, effective February 4, 2011.

On June 28, 2010, the Veteran contacted VA for information on how to file a claim for service connection for posttraumatic stress disorder (PTSD). In response, the RO furnished the Veteran with the appropriate claims form. On July 2, 2010, the RO received the Veteran’s completed VA Form 21-526b requesting service connection for PTSD, migraine headaches, and depression. 

Thereafter, in April 2012, the RO awarded service connection for the Veteran’s PTSD with assignment of a 30 percent disability evaluation. A timely appeal of the disability evaluation assigned was received in May 2012. 

In March 2016, the RO awarded an increased disability rating of 70 percent for the Veteran’s PTSD, effective from June 28, 2010 to December 15, 2015, and a 100 percent disability rating from December 15, 2015. Service connection was also granted for a lumbar spine disability with a 20 percent evaluation effective February 4, 2011 and migraine headaches with a 50 percent evaluation effective July 2, 2010. 

Also, in March 2016, the RO issued a rating decision addressing his claim for a higher evaluation for PTSD. The Veteran perfected a timely appeal of this decision in May 2016. 

Following the Veteran’s submission of a completed application for increased compensation based on unemployability in August 2018, the RO issued an October 2018 rating decision finding that the Veteran’s claim for individual unemployability was moot given the award of a 100 percent schedular rating. The Veteran followed by submitting a notice of disagreement with the denial of TDIU in November 2018.

In January 2019, the Veteran elected participation in RAMP and requested the Higher Level Review option. He acknowledged that he was withdrawing all eligible pending compensation appeal in their entirety and any associated hearing requests.

In March 2019, the agency of original jurisdiction (AOJ) issued a Higher Level Review decision that granted TDIU and eligibility for Dependents’ Educational Assistance effective from February 4, 2011 and denied higher ratings for PTSD, migraine headaches, and a lumbar spine disability. In response, the Veteran submitted a VA Form 10182 appealing only the denial of an effective date prior to February 4, 2011 for the grant of TDIU. On this Form, he elected Direct Review of the decision by a Veterans Law Judge. 

As shown above, the Veteran’s current appeal arises from a claim for service connection for PTSD initially received by the RO in June 28, 2010. In this regard, the Veteran perfected a timely appeal of the initial disability evaluation assigned for his PTSD. While a TDIU was not expressly requested in the initial claim filed, the issue of the Veteran’s entitlement to TDIU flows from the Veteran’s claim for a higher initial rating for his service-connected PTSD. Rice v. Shinseki, 22 Vet. App. 447 (2009) (holding that, when evidence of unemployability is submitted during the course of an appeal from an assigned disability rating, a claim for a TDIU will be considered part and parcel of the claim for benefits for the underlying disability). Accordingly, June 28, 2010 is the date of claim for the pending appeal. 

Having determined the appropriate date of claim for the appeal, the Board will turn to the merits of the appeal. Total disability is considered to exist when there is any impairment which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 3.340(a)(1). Total disability may or may not be permanent. Id. Total ratings are authorized for any impairment or combination of impairments for which the Rating Schedule prescribes a 100 percent evaluation. 38 C.F.R. § 3.340(a)(2). 

A TDIU may be assigned when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of their service-connected disabilities. 38 C.F.R. § 4.16(a). If there is only one such disability, it must be rated as at least 60-percent disabling, and if there are two or more disabilities, at least one disability must be rated as at least 40-percent disabling and there must be sufficient additional disability to bring the combined rating to at least 70 percent. Id.

For the above purpose of one 60 percent disability, or one 40 percent disability in combination, the following will be considered as one disability: (1) disabilities of one or both upper extremities, or of one or both lower extremities, including the bilateral factor, if applicable, (2) disabilities resulting from common etiology or a single accident, (3) disabilities affecting a single body system, e.g. orthopedic, digestive, respiratory, cardiovascular-renal, neuropsychiatric, (4) multiple injuries incurred in action, or (5) multiple disabilities incurred as a prisoner of war. Id.

Entitlement to a total rating must be based solely on the impact of the Veteran’s service-connected disabilities on his ability to keep and maintain substantially gainful employment. See 38 C.F.R. §§ 3.340, 3.341, 4.16. While the regulations do not provide a definition of “substantially gainful employment,” the VA Adjudication Procedure Manual, M21-1, Part VI, paragraph 7.09(a)(7), defines the term as “that which is ordinarily followed by the nondisabled to earn their livelihood with earnings common to the particular occupation in the community where the Veteran resides.” Also, in Faust v. West, 13 Vet. App. 342 (2000), the Court of Appeals for Veterans Claims (Court/CAVC) defined “substantially gainful employment” as an occupation “that provides an annual income that exceeds the poverty threshold for one person, irrespective of the number of hours or days that the Veteran actually works and without regard to the Veteran’s earned annual income...”

The ability to work sporadically or obtain marginal employment is not substantially gainful employment. 38 C.F.R. § 4.16(a); Moore v. Derwinski, 1 Vet. App. 356, 358 (1991). Marginal employment, i.e., earned annual income that does not exceed the poverty threshold for one person, is not considered substantially gainful employment. 38 C.F.R. § 4.16(a). Marginal employment also may be held to exist on a facts-found basis when earned annual income exceeds the poverty threshold. Id. Such situations may include, but are not limited to, employment in a protected environment such as a family business or sheltered workshop. Id.

Requiring a Veteran to prove that he is 100-percent, i.e., totally unemployable, is different than requiring he prove that he cannot maintain substantially gainful employment. The use of the word “substantially” suggests intent to impart flexibility into a determination of the Veteran’s overall employability, whereas a requirement that a Veteran prove 100-percent unemployability leaves no flexibility. Roberson v. Principi, 251 F.3d 1378, 1385 (Fed. Cir. 2001).

But that said, as already alluded to, to receive a TDIU, the Veteran’s service-connected disabilities, alone, must be sufficiently severe to cause unemployability. Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Furthermore, VA regulations provide that all Veterans who, in light of their individual circumstance, but without regard to age, are unable to secure and follow a substantially gainful occupation as a result of service-connected disability shall be rated totally disabled, without regard to whether an average person would be rendered unemployable under the circumstances. See VAOPGPREC 75-91; 57 Fed. Reg. 2317 (1992).

Consideration may be given to the Veteran’s level of education, special training, and previous work experience in arriving at a conclusion. 38 C.F.R. § 4.16(b). However, individual unemployability must be determined without regard to any nonservice-connected disabilities or the Veteran’s advancing age. 38 C.F.R. §§ 3.341(a), 4.16, 4.19; Van Hoose v. Brown, 4 Vet. App. 361 (1993). A high rating in itself is recognition that the impairment makes it difficult to obtain or keep employment, but the ultimate question is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether he can find employment. Van Hoose, 4 Vet. App. at 363.

Thus, the Board must evaluate whether there are circumstances in the Veteran’s case, apart from any non-service-connected conditions and advancing age, which would justify a TDIU rating. 38 C.F.R. §§ 3.341(a), 4.16(a), 4.19. See Van Hoose v. Brown, 4 Vet. App. 361 (1993); see also Hodges v. Brown, 5 Vet. App. 375 (1993); Blackburn v. Brown, 4 Vet. App. 395 (1993). When reasonable doubt arises as to the degree of disability, such doubt will be resolved in the Veteran’s favor. 38 C.F.R. § 4.3.

That being the relevant law to the Veteran’s claim, the Board observes that the competent and credible medical evidence of record demonstrates that the Veteran was unable to obtain or maintain substantially gainful employment beginning on and after June 28, 2010. As discussed above, the longitudinal medical evidence of record demonstrates that the Veteran’s symptoms of PTSD have been chronic and continuous since that time, and more nearly approximate an initial 70 percent disability evaluation.

Notably, the Board finds the August 2010 statement, August 23, 2010 psychological examination, June 21, 2011 statement, treatment records from October 2010 and July 2012, October 2012 examination, and the July 2018 vocational assessment to be probative. In his statement dated August 5, 2010, Dr. Stout documented that the Veteran reported severe symptoms that included hypervigilance, high anxiety in crowded or conflicted situations, a high level of tension, severe headaches which were worsened with anxiety, and insomnia. Dr. Stout stated that he did not believe the Veteran could successfully work in this condition; however, the Veteran would need a more comprehensive evaluation to determine if and when he could work a part-time or full-time schedule, and what type of workplace restrictions would be necessary. 

On August 23, 2010, the Veteran attended a psychological examination, performed by QTC services. The Veteran was diagnosed with posttraumatic stress disorder with alcohol and cannabis abuse. A mental status examination revealed that the Veteran’s orientation was within normal limits. His appearance and hygiene were not appropriate and showed signs of neglect as he was disheveled and unkempt. His affect and mood showed a disturbance of motivation and mood, anxiety and depressed mood. The Veteran reported feeling sad, anxious, irritable, chronic sleeping problems, and angry with loss of interest and motivation. His communication and speech were within normal limits. He had trouble concentrating due to impaired focus and attention. He reported panic attacks that occur less than once per week, which cause anxiety, fear, and nausea. Hallucinations and delusions were absent. Memory was described as mildly impaired, resulting in forgetting names, directions, and recent events. However, suicidal and homicidal ideation were absent. The examiner stated that the best description of the Veteran’s current psychiatric impairment was psychiatric symptoms caused occupational and social impairment with an occasional decrease in work efficiency and intermittent inability to perform occupational tasks although generally functioning satisfactorily with routine behavior, self-care, and normal conversation. 

In her statement dated June 21, 2011, Dr. Cox noted that the Veteran exhibited symptoms of hypervigilance, concentration problems, headaches, and panic attacks. The Veteran indicated that he liked to sit with his back against the wall because he did not like people to be behind him. He also reported getting very emotional at work and he was put on final notice due to decreased productivity. Dr. Cox noted that the Veteran eventually lost that particular job. Treatment records from Dekalb Community Service Board from October 2010 showed he was treated for depression and substance abuse. Suicidal ideation without a plan was noted. It was also documented that the Veteran was fired from his last job for having conflicts with his supervisors. He committed to a treatment plan which included medication. 

The Veteran was given a vocational assessment in July 2018 in which the examiner reviewed the Veteran’s medical records. 

After a thorough review of the record, the opinion from the July 2018 vocational assessment was that what appeared to be the chronicity and permanency of the Veteran’s severe psychiatric symptoms and functional limitations resultant of his service-connected chronic PTSD with alcohol and cannabis abuse disorder with symptoms of depression and anxiety, and migraine headaches associated with his PTSD, in her opinion, caused the Veteran to not be able to secure or maintain any significantly gainful occupation since June 2010 when he was terminated from his last job due to effects of his psychiatric disorder and excessive absenteeism due to his migraine headaches, as evidenced by the totality of his mental health record and C&P PTSD examinations.

The vocational examiner’s opinion was based on the following factors and records: (1) award of a 70% service-connected disability rating for PTSD effective June 28, 2010 indicating occupational and social impairments with deficiencies in most areas, such as work, school, family relations, judgment, thinking or mood due to such symptoms as: suicidal ideation; obsessional rituals; which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or worklike setting); inability to establish and maintain effective relationships; (2) the Work Evaluation Report from Jennifer Blevins from the RACHAM Center dated August 2010; the Psychological Evaluation from Dr. Vandana Anand dated August 2010; the Mental Assessment Capacity Relative to Work completed by Dr. Jocelyn Cox dated June 2011; the Review PTSD C&P Examination Report dated October 2012; and the totality of his mental health records from October 2010 through October 2012 that also demonstrated the severity of his headache condition caused by his PTSD since June 2010 and continued to affect his ability to function on a daily basis to date.

Considering the above factors, it was the examiner’s opinion that the Veteran should be considered to be entitled to a 100 percent rating for TDIU as of June 2010 resultant of his service-connected conditions of PTSD and migraine headache conditions.

The Board finds the July 2018 retrospective opinion highly probative as it includes a thorough discussion of the Veteran’s medical history and specifically addresses his employability during the appeal period. The Veteran has meet to schedular requirements for consideration of a schedular TDIU since he filed his initial claim for service connection for PTSD and headaches in June 2010. The longitudinal medical and lay evidence of record indicate that the Veteran experienced chronic and recurrent panic attacks, flashbacks, chronic depression, and anxiety, such that he would be significantly impaired in his ability to maintain and establish any type of sustained personal contact or job. Given these social and occupational impairments, the Board finds it reasonable to assume that his service-connected PTSD symptoms prevented the Veteran from obtaining and maintaining employment beginning on and after June 28, 2010.

Finally, the Board finds that the AOJ’s award of entitlement to service connection for TDIU, with an effective date of June 28, 2010, represents the earliest possible effective date for entitlement. See 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400. Applying the regulations discussed above, the effective date for a grant of service connection following a prior a final prior disallowance is the date of receipt of the application to reopen, or the date entitlement arose, whichever is later. 38 U.S.C. § 5110; 38 C.F.R. § 3.400. As such, June 28, 2010, is the earliest possible effective date for its grant of entitlement to TDIU as the Veteran was not service connected for PTSD prior to June 28, 2010. See Leonard v. Nicholson, 405 F.3d 1333 (Fed. Cir. 2005); Sears v. Principi, 349 F.3d 1326 (Fed. Cir. 2003). Thus, under the law, there is no basis to assign an earlier effective date for an award of entitlement to service connection for TDIU.

Therefore, in light of the facts and analysis above, the Board finds that the Veteran is entitled to an earlier effective date, of June 28, 2010, but no sooner, for the award of entitlement to a TDIU. See 38 C.F.R. § 3.400. 

 

DAVID L. WIGHT

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board K. Bristor

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.