Citation Nr: 1703150 
Decision Date: 02/02/17 Archive Date: 02/15/17

DOCKET NO. 09-40 573 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Phoenix, Arizona


THE ISSUES

1. Entitlement to a disability rating in excess of 50 percent for post-traumatic stress disorder (PTSD) prior to August, 10, 2015, and in excess of 70 percent thereafter.

2. Entitlement to a total disability rating based on individual unemployability (TDIU) due to the service-connected PSTD.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

N. Riley, Associate Counsel



INTRODUCTION

The Veteran served on active duty from August 1965 to August 1969.

This case comes before the Board of Veterans' Appeals (Board) on appeal from a September 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Phoenix, Arizona, that continued a 50 percent rating for PTSD and denied entitlement to a TDIU.

In a subsequent rating decision in September 2015, the RO increased the disability rating for PTSD to 70 percent, effective August 10, 2015. This action did not satisfy the Veteran's appeal. AB v. Brown, 6 Vet. App. 35, 38 (1993).

The RO also issued a statement of the case in April 2015 for the issues of service connection for tinnitus and service connection for residuals scarring of the lung secondary to tuberculosis. As the Veteran did not perfect an appeal on these issues, they are not before the Board. See 38 C.F.R. § 20.202; see also 38 U.S.C.A. 7105(d)(3)-(5).
 
In February 2016, the Board remanded the claims for additional evidentiary development. As will be discussed further, there has been compliance with the Board's remand instructions. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (noting that where the remand orders of the Board are not complied with, the Board errs as a matter of law when it fails to ensure compliance). 

The Board has reviewed all pertinent evidence in the Veteran's claims file, which has been converted in its entirety to an electronic record as part of VA's paperless Veterans Benefits Management System (VBMS) and Virtual VA.






FINDINGS OF FACT

1. For the entire appeal period, symptoms and overall impairment caused by PTSD have more nearly approximated occupational and social impairment with deficiencies in most areas, but not total occupational and social impairment.

2. The evidence is at least evenly balanced as to whether the Veteran's service connected PTSD renders him unable to secure or follow substantially gainful employment.


CONCLUSIONS OF LAW

1. The criteria for a rating of 70 percent, but no higher, for PTSD have been met for the entire appeal period. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 4.1, 4.2, 4.3, 4.7, 4.130, Diagnostic Code (DC) 9411 (2016).

2. With reasonable doubt resolved in favor of the Veteran, the criteria for a TDIU are met for the entire appeal period. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.340, 4.16 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits pursuant to 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.159.

VA's duty to notify has been satisfied through a notice letters dated August 2008 and January 2009 to the Veteran, which fully addressed all notice elements. Specifically, these letters informed the Veteran of what evidence was required to substantiate his claims for service connection an increased rating, of the Veteran's and VA's respective duties for obtaining evidence, and the process by which disability ratings and effective dates are assigned. The Board, therefore, finds that all notices required by the Veteran Claims Assistance Act (VCAA) and implementing regulations were furnished to the Veteran and that no useful purpose would be served by delaying appellate review to send out additional VCAA notices.

VA must also make reasonable efforts to assist the Veteran in obtaining evidence necessary to substantiate her claims, unless no reasonable possibility exists that such assistance would aid in substantiating the claims. 38 U.S.C.A. § 5103A ; 38 C.F.R. § 3.159.

Service treatment records are associated with the claims file. All outstanding VA and private treatment records identified by the Veteran have also been associated with the claims file.

Regarding the increased rating claim, the Veteran was afforded VA examinations in August 2008 and August 2015. See 38 U.S.C.A. § 5103A(d); 38 C.F.R. § 3.159(c)(4). As indicated by the discussion below, the examiners performed a thorough physical evaluation of the Veteran, the examiner reviewed the Veteran's pertinent medical history and provided findings responsive to the applicable rating criteria. Thus, the Board finds these exams adequate to decide the increased rating issue. See generally Barr v. Nicholson, 21 Vet. App. 303, 311 (2007).

The Board also finds that substantial compliance with the Board's remand directives has been achieved. Updated VA treatment records and SSA records have been obtained. As such, the Board finds that substantial compliance with the Board's remand directives has been accomplished. See Stegall, 11 Vet. App. at 271.

In light of the foregoing, the Board is satisfied that all relevant facts have been adequately developed to the extent possible; no further assistance to the appellant in developing the facts pertinent to the issue on appeal is required to comply with the duty to assist. 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.159.



Merits

Under 38 U.S.C.A. § 7104, Board decisions must be based on the entire record, with consideration of all the evidence. The law requires only that the Board address its reasons for rejecting evidence favorable to the claimant. Timberlake v. Gober, 14 Vet. App. 122 (2000). The Federal Circuit has held that while the Board must review the entire record, it does not have to discuss each piece of evidence. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000).

In deciding the Veteran's claim, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination, the benefit of the doubt is afforded the claimant. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Schedule), found in 38 C.F.R. Part 4 (2016). The Schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1 (2016). In resolving this factual issue, the Board may only consider the specific factors as are enumerated in the applicable rating criteria. See Massey v. Brown, 7 Vet. App. 204, 208 (1994); Pernorio v. Derwinski, 2 Vet. App. 625, 628 (1992).

In considering the severity of a disability, it is essential to trace the medical history of the veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41 (2016). Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of any disability present. 38 C.F.R. § 4.2; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Although the regulations do not give past medical reports precedence over current findings, the Board is to consider the veteran's medical history in determining the applicability of a higher rating for the entire period in which the appeal has been pending. Powell v. West, 13 Vet. App. 31, 34 (1999). Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. Francisco v. Brown, 7 Vet. App. 55 (1994). Staged ratings are, however, appropriate when the factual findings show distinct time periods in which a disability exhibits symptoms that warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007). "The relevant temporal focus for adjudicating an increased-rating claim is on the evidence concerning the state of the disability from the time period one year before the claim was filed until VA makes a final decision on the claim." Hart, 21 Vet. App. at 509.

A. Increased Rating

The Veteran's service-connected disability is rated pursuant to 38 C.F.R. § 4.130, Diagnostic Code 9411, pertaining to PTSD.

A 50 percent evaluation is warranted when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short-and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent disability evaluation is warranted when there is occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or work-like setting); inability to establish and maintain effective relationships. Id.

A 100 percent disability evaluation is warranted when there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time and place; memory loss for names of close relatives, own occupation, or own name. Id.

The symptoms listed in the rating schedule are not intended to constitute an exhaustive list, but rather serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. See Mauerhan v. Principi, 16 Vet. App. 436 (2002). Thus, the evidence considered in determining the level of impairment under § 4.130 is not restricted to the symptoms provided in the Diagnostic Code. Instead, VA must consider all symptoms of a claimant's condition that affect the level of occupational and social impairment, including, if applicable, those identified in the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, of the American Psychiatric Association (DSM-IV). 

The DSM-IV contains a Global Assessment of Functioning (GAF) scale, with scores ranging between zero and 100 percent, representing the psychological, social, and occupational functioning of an individual on a hypothetical continuum of mental health-illness. GAF scores included in the record are a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Carpenter v. Brown, 8 Vet. App. 240, 242 (1995). While GAF scores are probative of the Veteran's level of impairment, they are not to be viewed outside the context of the entire record. Therefore, they will not be relied upon as the sole basis for an increased disability evaluation.

The Board notes that effective August 4, 2014, VA amended the portion of its Schedule for Rating Disabilities dealing with mental disorders and its adjudication regulations that define the term "psychosis" to remove outdated references to the DSM-IV and replace them with references to the updated Fifth Edition (DSM- 5). The provisions of the final rule apply to all applications for benefits that are received by VA or that were pending before the AOJ on or after August 4, 2014. As the RO certified the Veteran's appeal to the Board on August 26, 2015, the claim is governed by the DSM-5. 79 Fed. Reg. 45094 (Aug. 4, 2014). In this regard, the August 2015 VA examination was conducted utilizing the DSM-5, and therefore no GAF score was assigned. However, the Board will still consider previously assigned GAF scores in addressing the instant appeal.

Turning to the evidence of record, post-service Vet Center treatment records dated from December 2008 through June 2011 are associated with the claims file. Reports from individual and group counseling show that the Veteran was diagnosed with PTSD manifested by symptoms to include irritability, serious sleep impairment, nightmares, anger management issues, and emotional numbing. 

During the period on appeal, VA treatment records reflect medication management for PTSD and the Veteran's GAF score ranged from 50 to 55, indicative of moderate to serious symptoms. Additionally, treatment during this period shows the Veteran presented with symptoms of irritability and anger with startled responses and impaired concentration. He also reported that medication is helpful with controlling his symptoms. See Phoenix AZ VA Medical Center treatment records.

The Veteran was afforded a VA examination in September 2008. The Veteran was noted to only average four of sleep of night. He reported verbal confrontations with strangers in day to day interactions. He avoids people most time to avoid these confrontations. The examiner noted the primary impairment he suffers from is unprovoked anger and irritability as well as social distancing from others. A current GAF score of 50 was recorded.

The Veteran was afforded a VA examination in August 2015. The examiner noted that the symptoms the Veteran has experienced remained mostly unchanged since the previous examination. Again, irritability, trouble sleeping, impaired concentration, and the avoidance of social interactions were noted by the examiner. VA treatment records are largely in accord with the findings of the VA examiners.

Based on the above, the Board finds that the impact of the Veteran's PTSD symptoms on his social and industrial functioning is sufficient to approximate the degree of impairment contemplated by a 70 percent rating during the entire appeal period. While the GAF scores have generally reflected levels of moderate to serious impairment, neither GAF scores nor an examiner's characterization of the degree of the disability are dispositive of the legal questions involved in determining the appropriate rating for PTSD. 38 C.F.R. § 3.100(a) (delegating the Secretary's authority "to make findings and decisions ... as to the entitlement of claimants to benefits" to, inter alia, VA "adjudicative personnel"); 38 C.F.R. § 4.2 ("It is the responsibility of the rating specialist to interpret reports of examination ... so that the current rating may accurately reflect the elements of disability present."); VA Adjudication Procedures Manual, M21-1, Part III, Subpart. iv, Chapter 3, Section A.7.i (updated Oct. 28, 2015) ("Do not request a medical authority to make conclusions of law, which is a responsibility inherent to the rating activity").

The symptomatology associated with the Veteran's service-connected PTSD, to include that indicated by the lay statements and treatment records, supports the assignment of a 70 percent rating because this disability has been shown to result in occupational and social impairment, with deficiencies in most areas, such as work, family relations, and mood, due to such symptoms as periods of unprovoked irritability with outbursts of anger; difficulty in adapting to stressful circumstances; and impaired concentration. 38 C.F.R. § 4.130, DC 9411. Specifically, these symptoms have been endorsed by the Veteran, as corroborated by VA examiners and treatment providers. The evidence reflects that the Veteran's psychological symptoms have been relatively consistent and are of such severity as to warrant a 70 percent evaluation for the entire appeal period.

Significantly, however, the symptoms have not at any point during the appeal period more nearly approximated total occupational and social impairment. In this regard, the Board recognizes that the Veteran was not employed during the period under consideration. However, the evidence does not reflect that the symptoms have more nearly approximated total occupational and social impairment. Although he socially isolates himself, the Veteran's marriage is stable and he maintains relationship with his children. Moreover, he has consistently demonstrated appropriate hygiene, and his thought processes have been intact throughout the appeal period. Thus, neither the symptoms nor overall level of impairment more nearly approximate the criteria for a 100 percent rating under the rating criteria, and a rating higher than 70 percent is therefore not warranted for the Veteran's PTSD.
The Board has considered whether staged ratings are appropriate. The evidence of record shows that the Veteran's PTSD symptoms have not fluctuated materially during the course of this appeal as to warrant a disability rating in excess of 70 percent. As such, a staged rating is not warranted.

The record does not establish that the rating criteria are inadequate for rating the Veteran's PTSD. As indicated by the cases cited above, the criteria in the general rating formula for mental disorders include both the symptoms listed as symptoms "such as" those listed, along with the overall impairment caused by these symptoms. This broad language in the criteria thus contemplates all of the symptoms even though they are not specifically listed. Thus, consideration of whether the Veteran's disability picture exhibits other related factors such as marked interference with employment and frequent hospitalization, is not required, and referral for an extraschedular rating is unnecessary. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd sub nom. Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009).

B. TDIU

VA will grant a TDIU when the evidence shows that the Veteran is precluded, by reason of his service-connected disabilities, from securing and following "substantially gainful employment" consistent with his education and occupational experience. 38 C.F.R. §§ 3.340, 3.341, 4.16; VAOPGCPREC 75-91.

The central inquiry is, "whether the Veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993).

The regulations provide that if there is only one such disability, it must be rated at 60 percent or more; and if there are two or more disabilities, at least one disability must be rated at 40 percent or more, and sufficient additional disability must bring the combined rating to 70 percent or more. Disabilities resulting from common etiology or a single accident or disabilities affecting a single body system will be considered as one disability for the above purposes of one 60 percent disability or one 40 percent disability. 38 C.F.R. § 4.16(a).

The Board must evaluate whether there are circumstances in the Veteran's case, apart from any nonservice-connected disability and advancing age, which would justify a TDIU due solely to the service-connected disabilities. See Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993); see also Blackburn v. Brown, 5 Vet. App. 375 (1993). Marginal employment shall not be considered substantially gainful employment. 38 C.F.R. § 4.16(a).

The Veteran has been granted service connection for PTSD rated as 70 percent, as decided above, for the entire appeal period. Hence, he now meets the percentage criteria for a TDIU laid out in 38 C.F.R. § 4.16(a) for the entire period. Even so, to grant TDIU it must be found that the Veteran is unable to secure or follow a substantially gainful occupation as a result of his service-connected disabilities.

Consequently, the Board must determine whether the Veteran's service-connected disabilities combine to preclude him from engaging in substantially gainful employment (work that is more than marginal, which permits the individual to earn a "living wage"). Moore v. Derwinski, 1 Vet. App. 356 (1991). The fact that a Veteran may be unemployed or has difficulty obtaining employment is not determinative. The ultimate question is whether the Veteran, because of service-connected disabilities, is incapable of performing the physical and mental acts required by employment, not whether he can find employment. Van Hoose, 4 Vet. App. at 363. Inability to work due to advancing age may not be considered. 38 C.F.R. §§ 3.341(a), 4.19 (2016). In making its determination, VA considers such factors as the extent of the service-connected disabilities, and employment and educational background. See 38 C.F.R. §§ 3.340, 3.341, 4.16(b), 4.19. 

The evidence of record reveals that the Veteran completed his GED and two years of college. He worked at for a phone utility company for 30 years until 2002, when he retired.

A September 2008 VA examination report notes there are no employment issues to report because the veteran was retired at that time. The examiner did report the Veteran's symptoms are not too severe to make him incapable of employment, however that his employment "would need to be in a situation where his contact with the public is limited and it is not a position where he's required to confront others."

A November 2014 VA treatment note reports that the Veteran was able to work at the telephone company because he was outside and by himself often. It further noted that his confrontations with fellow employees had become a "problem" at the time of his retirement in 2002.

An August 2015 VA examination mirrors the exact language of the September 2008 examination stating any employment of the veteran "would need to be in a situation where his contact with the public is limited and it is not a position where he's required to confront others."

After having reviewed the record and weighed the evidence both in support of and against the claim, the Board finds that the evidence is in relative equipoise as to whether the Veteran's service-connected PSTD renders him unemployable. In this regard, both the September 2008 and August 2015 VA examiner found that the Veteran's PTSD symptoms would limit the employment he would be able to seek as the position would have to preclude interactions with other. Furthermore, the Veteran's ongoing treatment notes indicate he had conflict issue during his last employment and that he currently suffers from chronic sleep and concentration impairments. Moreover, to the extent that the VA examiners expressed an opinion on the ultimate question of the Veteran's employability, the "applicable regulations place responsibility for the ultimate TDIU determination on the VA, not a medical examiner." Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2013). As the above analysis reflects that there is probative evidence both for and against the claim in this case, the Board finds the evidence is approximately evenly balanced as to whether the Veteran's service-connected disabilities preclude him from obtaining and retaining substantially gainful employment. As the reasonable doubt created by this relative equipoise in the evidence must be resolved in favor of the Veteran, entitlement to a TDIU is warranted. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 4.3.


ORDER

Entitlement to a rating of 70 percent, but no higher, is granted for the Veteran's PTSD for the entire appeal period.

Entitlement to a TDIU is granted for the entire appeal period.



____________________________________________
Jonathan Hager
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs