﻿Citation Nr: AXXXXXXXX
Decision Date: 08/22/19 Archive Date: 08/22/19

DOCKET NO. 190103-2079
DATE: August 22, 2019

ORDER

Entitlement to an initial rating in excess of 50 percent for migraine headaches, to include on an extraschedular basis, is denied.

Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU), from September 7, 2018, is granted.

REMANDED

Entitlement to a TDIU, prior to September 7, 2018, is remanded.

FINDINGS OF FACT

1. The Veteran’s service-connected migraine headaches are assigned the maximum schedular rating authorized under Diagnostic Code 8100 and the Veteran’s headache symptoms are contemplated by the schedular criteria.

2. From September 7, 2018, the Veteran’s service-connected disabilities prevent her from obtaining and maintaining substantially gainful employment.

CONCLUSIONS OF LAW

1. There is no legal basis for a schedular rating in excess of 50 percent for the Veteran’s headaches, and an extraschedular rating is not warranted. 38 U.S.C. § 1155 (2012); 38 C.F.R. § § 3.321, 4.124a, Diagnostic Code 8100 (2018).

2. The criteria for entitlement to a TDIU from September 7, 2018, are met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.16 (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board notes that the rating decisions on appeal were issued in April 2013 and December 2015. In April 2018, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)).

The Veteran served on active duty from February 1980 to April 1985. The Veteran selected the Higher-Level Review lane when she opted in to the Appeals Modernization Act (AMA) review system by submitting a Rapid Appeals Modernization Program (RAMP) election form. Accordingly, the November 2018 AMA rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

In the April 2013 rating decision, the AOJ awarded service connection for migraine headaches, assigning a noncompensable initial rating effective April 11, 2012. In June 2013, the Veteran filed a timely notice of disagreement as to the initial rating assigned. Subsequently, in a December 2014 rating decision, the initial rating for migraine headaches was increased from noncompensable to 50 percent effective April 11, 2012. In the December 2015 rating decision, the AOJ denied a TDIU. The Veteran appealed the denial in December 2015.

1. Entitlement to an initial rating in excess of 50 percent for migraine headaches, to include on an extraschedular basis.

Disability ratings are determined by the application of the VA’s Schedule for Rating Disabilities (Rating Schedule), which is based on the average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R. Part 4 (2018). Pertinent regulations do not require that all cases show all findings specified by the Rating Schedule, but that findings sufficient to identify the disease and the resulting disability and above all, coordination of the rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21 (2018).

Evaluation of a service-connected disability requires a review of a veteran’s medical history with regard to that disorder. However, the primary concern in a claim for an increased evaluation for service-connected disability is the present level of disability. While the entire recorded history of a disability is important for more accurate evaluations, the regulations do not give past medical reports precedence over current findings. Francisco v. Brown, 7 Vet. App. 55, 58 (1994).

Where a veteran appeals the initial rating assigned for a disability, evidence contemporaneous with the claim and the initial rating decision granting service connection would be most probative of the degree of disability existing at the time that the initial rating was assigned and should be the evidence “used to decide whether an original rating on appeal was erroneous.” See Fenderson v. West, 12 Vet. App. 119, 126 (1999). If later evidence indicates that the degree of disability increased or decreased following the assignment of the initial rating, “staged” ratings may be assigned for separate periods of time. Id.

Diagnostic Code 8100 provides that a 50 percent rating is warranted for headaches with very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. A 30 percent rating is warranted for headaches with characteristic prostrating attacks occurring on average once a month over the last several months. A 10 percent rating is warranted for headaches with characteristic prostrating attacks averaging one in two months over the last several months. A noncompensable rating is warranted for headaches with less frequent attacks. 38 C.F.R. § 4.124a.

As to consideration of referral for an extraschedular rating, such consideration requires a three-step inquiry. See Thun v. Peake, 22 Vet. App. 111 (2008), aff’d sub nom. Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). The first question is whether the schedular rating criteria adequately contemplate the Veteran’s disability picture. Thun, 22 Vet. App. at 115. If the criteria reasonably describe the Veteran’s disability level and symptomatology, then the Veteran’s disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. If the schedular evaluation does not contemplate the Veteran’s level of disability and symptomatology, and is found inadequate, then the second inquiry is whether the Veteran’s exceptional disability picture exhibits other related factors such as those provided by the regulation as governing norms. If the Veteran’s disability picture meets the second inquiry, then the third step is to refer the case to the Under Secretary for Benefits or the Director of Compensation Service to determine whether an extraschedular rating is warranted.

The Veteran’s headaches have been assigned a 50 percent initial rating. This is the maximum schedular rating assignable for that condition, and she contends that he is entitled to an extra-schedular rating.

An October 2012 VA examination report reflects that the Veteran’s headaches are limiting her activity and associated with nausea malaise and require pain medications at least every other day. She lost work capability 3 to 4 days a month as she has to leave work because of headaches. She described pulsating or throbbing head pain on both sides of the head, with nausea and sensitivity to light and sound. Typical head pain lasts 1 to 2 days. The examiner indicated that the Veteran has very frequent prostrating and prolonged attacks of migraine and nonmigraine headache pain, more frequently than once per week. As the functional impact on her ability to work, it was noted the Veteran had to leave work 3 to 4 days a month due to the severity of the headache and use larger screen computer because small print triggered headache.

A March 2013 VA examination report documents symptoms of pain on both sides of the head, nausea, sensitivity to light and sound. Typical head pain lasts 1 to 2 days. The examiner indicated that the Veteran has very frequent prostrating and prolonged attacks of migraine and non-migraine headache pain, more frequently than once per week. As the functional impact on her ability to work, it was noted the Veteran had to leave work when headaches become severe.

A June 2014 VA Headaches Disability Benefits Questionnaire indicates that the Veteran’s headache symptoms have been refractory to many medical and non-medical treatment. She reported pulsating or throbbing pain on both sides of the head, nausea, vomiting, sensitivity to light and sound, and changes in vision. Typical head pain lasts 1 to 2 days. The examiner indicated that the Veteran has very frequent prostrating and prolonged attacks of migraine and non-migraine headache pain, more frequently than once per week. The neurological examination was normal. The physician found that the Veteran’s headache condition impacted her ability to work as she occasionally needed to be absent from work.

A July 2014 VA neurology clinic note documents “chronic daily headache,” and that that the Veteran has been on multiple medications, such as Inderal, Topamax, Amitriptyline, Acupuncture, and Botox without much relief. In a September 2014 VA treatment record, the Veteran described two different types of headache. The more frequent is bitemporal pounding headache 2 to 3 times a week; the second is migraine headache 1 to 2 times a month, mid-frontal, with aura seeing dots. The migraine lasted a couple of days and she would go to bed turn off lights, phone, and television to alleviate migraine. She used Fioricet for bitemporal headache. 

In a September 2014 VA examination report, the Veteran reported “prostrating” migraine headache 2 to 3 times a month. She reported nausea, vomiting and dizziness, and sensitivity to light and sound with the migraines. Typical migraine lasted about 24 hours. She has to leave work whenever these headaches occurred. She would get an aura of seeing “dots” in her field of vision prior to the headache pain. She no longer takes any NSAIDs as they did not provide any relief. She stated since stopping Fioricet a few months ago her daily headaches have now diminished to every other day or so, still bitemporal, but lasted only a few hours at the most. Her headache symptoms were described as pulsating or throbbing head pain, pain on both sides of the head, which worsens with physical activity. She experienced nausea, vomiting, sensitivity to light and sound, changes in vision, such as scotoma, flashes of light or tunnel vision, and sensory changes, such as feeling of pins and needles in extremities. Typical head pain lasted 1 to 2 days. The examiner indicated that the Veteran has characteristic prostrating attacks of migraine and non-migraine headache pain, once in 2 months. The examiner found that the Veteran’s headache condition impacted her ability to work as she missed 4 to 5 days of work per month for headaches in the previous year. The Veteran reported that she has not been working since the end of March of this year and applied for disability benefits due to her headaches and depression.

In an October 2014 private treatment record, the Veteran reported regular headaches 2 to 3 times a week and migraines two to three times a month, lasting from 24 to 48 hours. Associated symptoms include nausea, vomiting, photophobia, and dizziness. 

In a December 2015 VA examination report, the Veteran reported constant head pain, pulsating or throbbing head pain, on both sides of the head, which worsens with physical activity. She reported nausea, vomiting, sensitivity to light and sound, and changes in vision. Typical head pain lasted less than 1 day. She had characteristic prostrating attacks of migraine/non-migraine headache pain once every month. The examiner indicated that the Veteran has very prostrating and prolonged attacks of migraine/non-migraine headache pain productive of severe economic inadaptability. The examiner found that the Veteran’s headache condition impacted her ability to work as she could not work for two years because of headaches.

In an April 2017 VA neurology note, the Veteran gave a history of migraine that has been affecting her 3 to 4 days in week, lasting from hours to a day. 

During a December 2017 VA examination, the Veteran reported that she continued to have chronic migraine headaches, about twice a week, which typically lasted a few hours to all day. She experienced pulsating or throbbing head pain, on both sides of the head, with nausea, vomiting, sensitivity to light and sound, and changes in vision. Typical head pain lasted less than 1 day. She had characteristic prostrating attacks of migraine/non-migraine headache pain once every month. The examiner indicated that the Veteran had characteristic prostrating attacks of migraine/nonmigraine headache pain but did not have very prostrating and prolonged attacks of migraine/non-migraine headache pain productive of severe economic inadaptability. The examiner found that the Veteran’s headache condition impacted her ability to work as she had to retire 4 years ago due to frequent absences. She took early retirement.

In January 2018, the Veteran visited VA emergency department complaining of headache that was throbbing, severe and worse with noise and light. 

In a March 2018 VA neurology note, the Veteran reported continuing headache at least twice a week, lasting for two days, bi-frontal associated with nausea, photophobia and phonophobia.

Lay statements from the Veteran’s coworkers, supervisor and family attest to the fact that the Veteran left work early or had to miss work due to the severity of her migraine headaches.

Based on the evidence above, the Board finds that the Veteran’s headache symptomatology does not warrant referral for extraschedular consideration. Here, the rating criteria specifically address the Veteran’s headache symptomatology. As described above, the Veteran has chronic, prostrating headaches that occur more frequently than once per month lasting hours to a day. The diagnostic criteria include the nature and duration of the headaches that would encompass all of the symptoms experienced during such attacks, and their effect on economic adaptability, which would encompass a broad range of effects of these symptoms, to include those described by the Veteran. Thus, the Board finds that the Veteran’s disability picture is contemplated by the rating schedule, and the currently assigned disability rating is appropriate. See Thun, 22 Vet. App. at 115. Accordingly, a referral for extraschedular consideration is not warranted because her migraine headache symptoms are contemplated by the rating schedule.

In addition, as explained in more detail below, the Board is granting a TDIU from September 7, 2018. In Johnson v. McDonald, 762 F.3d 1362, 1365-66 (Fed. Cir. 2014), the Federal Circuit held that “[t]he plain language of § 3.321(b)(1) provides for referral for extraschedular consideration based on the collective impact of multiple disabilities. The Federal Circuit in Johnson indicated that the TDIU provision only accounts for instances in which a veteran’s combined disabilities establish total unemployability, i.e., a disability rating of 100 percent. Id. at 1366. On the other hand, 38 C.F.R. § 3.321(b)(1) performs a “gap-filling” function. Id. It accounts for situations in which a veteran’s overall disability picture establishes something less than total unemployability, but where the collective impact of a veteran’s disabilities is nonetheless inadequately represented. Id. As the Veteran has been granted TDIU from September 7, 2018, she is deemed to have total unemployability and there is no “gap” to fill by § 3.321(b).

As such, the Veteran’s migraine headaches have been assigned the maximum schedular rating available for headaches under 38 C.F.R. § 4.124a, Diagnostic Code 8100, and there is no legal basis upon which to award a rating in excess of 50 percent. In light of the above, the Veteran’s appeal as to this claim must be denied. Sabonis v. Brown, 6 Vet. App. 426, 430 (1994).

2. Entitlement to a TDIU from September 7, 2018.

VA will grant a TDIU when the evidence shows that the Veteran is precluded, by reason of her service-connected disabilities, from securing and following “substantially gainful employment” consistent with her education and occupational experience. 38 C.F.R. § § 3.340, 3.341, 4.16; VAOPGCPREC 75-91; 57 Fed. Reg. 2317 (1992).

The central inquiry is, “whether the Veteran’s service-connected disabilities alone are of sufficient severity to produce unemployability.” Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993).

The regulations provide that if there is only one such disability, it must be rated at 60 percent or more; and if there are two or more disabilities, at least one disability must be rated at 40 percent or more, and sufficient additional disability must bring the combined rating to 70 percent or more. Disabilities resulting from common etiology or a single accident or disabilities affecting a single body system will be considered as one disability for the above purposes of one 60 percent disability or one 40 percent disability. 38 C.F.R. § 4.16(a).

The Board must evaluate whether there are circumstances in the Veteran’s case, apart from any nonservice-connected disability and advancing age, which would justify a TDIU due solely to the service-connected disabilities. See Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993); see also Blackburn v. Brown, 5 Vet. App. 375 (1993). Marginal employment shall not be considered substantially gainful employment. 38 C.F.R. § 4.16(a).

The Veteran has been granted service connection for migraine headaches (rated as 50 percent disabling from April 11, 2012); left ear tinnitus (rated as 10 percent from November 12, 1991); left ear hearing loss (rated as noncompensable from November 12, 1991 and as 10 percent from April 11, 2012); facial acne (rated as noncompensable from April 11, 2012); and major depressive disorder with anxious distress (rated as 50 percent from September 7, 2018). As it pertains the rating period on appeal, the Veteran has a combined rating of 60 percent from April 11, 2012 and 80 percent from September 7, 2018. Hence, she meets the percentage criteria for a TDIU laid out in 38 C.F.R. § 4.16(a) from September 7, 2018.

Even so, to grant TDIU it must be found that the Veteran is unable to secure or follow a substantially gainful occupation as a result of her service-connected disabilities.

Consequently, the Board must determine whether the Veteran’s service-connected disabilities combine to preclude her from engaging in substantially gainful employment (work that is more than marginal, which permits the individual to earn a “living wage”). Moore v. Derwinski, 1 Vet. App. 356 (1991). The fact that a Veteran may be unemployed or has difficulty obtaining employment is not determinative. The ultimate question is whether the Veteran, because of service-connected disabilities, is incapable of performing the physical and mental acts required by employment, not whether he can find employment. Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). Inability to work due to advancing age may not be considered. 38 C.F.R. § § 3.341(a), 4.19 (2018). In making its determination, VA considers such factors as the extent of the service-connected disabilities, and employment and educational background. See 38 C.F.R. § § 3.340, 3.341, 4.16(b), 4.19. 

The evidence of record reveals that the Veteran completed two years of college but has no other education or training. She worked as a truck drive in the Army. After separation from service, she worked 40 hours a week as a secretary from July 1988 to March 2014. The Veteran’s records from the Social Security Administration (SSA) show that she stopped working due to bipolar disorder, depression, migraine headaches, tinnitus, thyroid disease and high cholesterol.

As discussed above, the Veteran’s migraine headaches produce severe economic inadaptability. The December 2017 VA examiner indicated that the Veteran had to take early retirement due to frequent absences. During an October 2018 VA examination, the Veteran reported that her left ear hearing loss and tinnitus make it difficult for her to understand speech. Her tinnitus worsens her migraines and affects her sleep because it is very loud.

Further, a December 2018 VA examination report reflects that the Veteran’s major depressive disorder causes occupational and social impairment with reduced reliability and productivity. She experiences symptoms of depressed mood, anxiety, mild memory loss, such as forgetting names, directions or recent events, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, and difficulty in adapting to stressful circumstances, including work or worklike setting. 

In addition, in March 2016, a VA vocational counselor found that the Veteran’s service-connected disabilities contribute in substantial part to her vocational impairment. Regarding the Veteran’s educational and occupational background, the counselor noted that she obtained a high school degree and took some college-level courses; however, she had no known degrees or certificates. She was trained in the Army as a truck driver. She worked as a secretary for approximately 32 years but had to resign from her position due to migraines and headaches. She has limited transferable skills in clerical work and truck driving and her current job skills are no longer compatible with her abilities, interests, and aptitude based on her service-connected disabilities. She would require formal education to compete for jobs that would match abilities, interests, and aptitudes. 

Thus, the evidence shows that the Veteran’s service-connected disabilities preclude her from obtaining and retaining substantially gainful employment from September 7, 2018, the day she met the schedular criteria. Concerning this, the “applicable regulations place responsibility for the ultimate TDIU determination on the VA, not a medical examiner.” Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2013). As the reasonable doubt created by this relative equipoise in the evidence must be resolved in favor of the Veteran, entitlement to a TDIU is warranted from September 7, 2018. See 38 U.S.C. § 5107(b); 38 C.F.R. § 4.3.

REASONS FOR REMAND

3. Entitlement to a TDIU, prior to September 7, 2018, is remanded.

The evidence reflects that the Veteran’s service-connected disabilities had a significant impact on her employability prior to the September 7, 2018 date she became eligible for this benefit on a schedular basis. Consequently, remand for referral of the issue of entitlement to a TDIU prior to September 7, 2018 pursuant to 38 C.F.R. § 4.16(b) is warranted. See Bowling v. Principi, 15 Vet. App. 1, 10 (2001) (the Board cannot consider entitlement to TDIU under 38 C.F.R. § 4.16(b) in the first instance but must first remand the claim for referral to VA’s Director of Compensation Service if such consideration is warranted).

The matters are REMANDED for the following action:

Refer the issue of entitlement to a TDIU prior to September 7, 2018, pursuant to 38 C.F.R. § 4.16(b), to the Director, Compensation Service.

 

L. CHU

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board M. J. In, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.