﻿Citation Nr: AXXXXXXXX
Decision Date: 07/31/20 Archive Date: 07/31/20

DOCKET NO. 190318-12689
DATE: July 31, 2020

ORDER

A disability rating in excess of 70 percent for an acquired psychiatric disability, characterized as unspecified depressive disorder, is denied.

A total disability rating based on individual unemployability (TDIU) is denied.

FINDINGS OF FACT

1. The Veteran’s acquired psychiatric disability has not been manifested by total occupational and social impairment.

2. The does not indicate that the Veteran was unable to secure or follow a substantially gainful occupation due to his service-connected disabilities.

CONCLUSIONS OF LAW

1. The criteria for a disability rating in excess of 70 percent for an acquired psychiatric disability, characterized as unspecified depressive disorder, have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107(b); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.7, 4.130, Diagnostic Code (DC) 9434.

2. The criteria TDIU have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107(b); 38 C.F.R. §§ 3.340, 3.341, 4.16.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from May 1982 to July 1982 and January 1984 to September 1986.

The rating decision on appeal was issued on February 22, 2019 and constitutes an initial decision. Therefore, the modernized review system, also known as the Appeals Modernization Act (AMA), applies. In the Veteran’s June 2019 notice of disagreement, he elected the Hearing option. 

In April 2010, the Veteran testified at a hearing before the undersigned Veterans Law Judge. A transcript of the hearing is of record. The Veteran submitted additional evidence within 90 days of that hearing, and such evidence has been considered in this adjudication.

Increased Rating

1. Entitlement to a disability rating in excess of 70 percent for an acquired psychiatric disability, characterized as unspecified depressive disorder

The Veteran is seeking a disability rating in excess of 70 percent for his service-connected acquired psychiatric disability. The Veteran contends that a 100 percent disability rating is warranted because it places a great strain on his personal life, exemplified by the fact that he was married in October 2019 and was divorced prior to the hearing, and causes him to have multiple nightmares per week, causes him to isolate, and has made it difficult for him to hold a job.

Disability evaluations are determined by the application of a schedule of ratings that is based on average impairment of earning capacity. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. See 38 C.F.R. § 4.1. Separate diagnostic codes identify the various disabilities. Although the Board typically considers only those factors contained wholly in the rating criteria, it is proper to consider factors outside the specific rating criteria when appropriate to best determine the level of occupational and social impairment. See Mauerhan v. Principi, 16 Vet. App. 436 (2002); Massey v. Brown, 7 Vet. App. 204, 208 (1994).

The Veteran’s acquired psychiatric disability has been assigned a 70 percent rating under 38 C.F.R. § 4.130, DC 9434. In order to warrant the maximum 100 percent rating, the evidence must demonstrate total occupational and social impairment due to symptoms such as, but not limited to, gross impairment in thought processes or communication, persistent delusions or hallucinations, grossly inappropriate behavior, persistent danger of hurting self or others, intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene), disorientation to time or place, and/or memory loss for names of close relatives, own occupation, or own name. 38 C.F.R. § 4.130, DC 9434.

After a review of the evidence of record, the Board determines that a disability rating in excess of 70 percent for the Veteran’s acquired psychiatric disability is not warranted because the evidence does not show that the symptoms of his acquired psychiatric disability cause total occupational and social impairment.

Initially, the reports from the August 2014 and February 2019 VA examinations fail to show that the Veteran’s acquired psychiatric disability causes total occupational and social impairment. The report from the August 2014 VA examination reflects that the examiner determined that the Veteran’s acquired psychiatric disability manifested itself through symptoms of depressed mood, anxiety, near-continuous panic or depression, affecting the ability to function independently, appropriately, and effectively, flattened affect, difficulty in adapting to stressful circumstances, including work or a worklike setting, an inability to establish and maintain effective relationships, and suicidal ideation. 

The examination report further reflects that the Veteran reported that he had not worked since 2009, when he was terminated “without question” after a supervisor accused him of stealing “an hour,” that he was angry when he was terminated, and had thoughts of killing himself and his supervisor whom he felt was wrecking his life. Additionally, the examination report reflects that the Veteran reported that little things bother him, that he avoids crowds, and that depression and suicidal thoughts were related to a lack of finances and his recent divorce. Based upon an in-person examination where the foregoing symptoms and behaviors were observed, and a review of the claims file, the examiner opined that the Veteran’s acquired psychiatric disability manifested itself through occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care, and conversation. 

The report from the February 2019 VA examination reflects that the examiner determined that the Veteran’s acquired psychiatric disability manifested itself through the symptom of depressed mood. The examination report further reflects that the Veteran reported that he lived with his mother sometimes and sister at other times because he was not stable, was married, but was not living with his wife, who was living with her daughter, saw his wife on a daily basis, became anxious around people, helped his 95 year old mother, got along well with his sister, had a strained relationship with his three adult children, had no friends, and attempted to avoid interactions with others. The examiner also observed that the Veteran was casually dressed and neatly groomed and had an unremarkable gait, posture, eye contact, and psychomotor activity. Further the examination report reflects that he denied all suicidal ideation and homicidal ideation, exhibited a broad affect that was appropriately reactive, denied hallucinations, exhibited a logical and coherent stream of thought, and had a healthy appetite. Based upon the in-person interview where the foregoing symptoms and behaviors were observed and a review of the claims file, the examiner opined that a mental condition has been formally diagnosed, but symptoms are not severe enough to either interfere with occupational and social functioning, or to require continuous medication. The examiner further explained that the Veteran’s primary problem appeared to be back pain and that he no longer presented with major depressive disorder, no longer met the criteria for unspecified trauma related disorder, and that although he met the criteria for unspecified depressive disorder, his symptoms did not significantly interfere with occupational or social functioning. 

The reports from the August 2014 and February 2019 VA examinations do not show that the Veteran’s acquired psychiatric disability causes total occupational and social impairment. As an initial matter, the August 2014 VA examiner opined that his acquired psychiatric disability caused only occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care, and conversation, the level of occupational and social impairment that warrants the assignment of a 30 percent disability rating. The February 2019 VA examiner opined that a mental condition had been formally diagnosed, but symptoms were not severe enough to either interfere with occupational and social functioning, or to require continuous medication, the level of occupational and social impairment that warrants the assignment of a noncompensable disability rating. 

Moreover, the examination reports do not reflect that the Veteran’s acquired psychiatric disability has manifested itself through a gross impairment in thought processes or communication, persistent delusions or hallucinations, grossly inappropriate behavior, an intermittent inability to perform activities of daily living, disorientation to time or place, or memory loss for names of close relative, his own occupation, or his own name given that he helped out his elderly mother, was casually dressed and neatly groomed and exhibited a broad affect that was appropriately reactive, denied hallucinations, and exhibited a logical and coherent stream of thought at the February 2019 VA examination. Additionally, the examination reports do not show that there was a peristent danger of him hurting himself or others. Although the report from the August 2014 VA examination reflects suicidal ideation, the Veteran related it to his financial situation and divorce, and the February 2019 VA examination reflects that he denied all suicidal ideation, showing that any suicidal ideation was not of a sufficient frequency, duration, or severity to show that he was a persistent danger of hurting himself or others.

In light of these clinical evaluations, the Board finds that the Veteran does not exhibit objective symptomatology sufficient to warrant a rating in excess of 70 percent. Here, the Board acknowledges that a November 2012 treatment record reflects that he had thoughts of homicidal ideation toward his boss who terminated his employment, and April 2013 treatment record, the February 2014 VA examination report, and a March 2019 treatment record reflect some evidence of suicidal ideation. Nevertheless, VA must engage in a holistic analysis in which it assesses the severity, frequency, and duration of the signs and symptoms of the veteran’s service-connected mental disorder; quantifies the level of occupational and social impairment caused by those signs and symptoms; and assigns an evaluation that most nearly approximates that level of occupational and social impairment. See Vazquez-Claudio, 713 F.3d at 115-17.

In this case, the Board finds that although the report from the February 2014 VA examination and the foregoing treatment records reflect that he has experience some suicidal and homicidal ideation it is not of a sufficient frequency, severity, and duration to warrant the assignment of a 100 percent disability rating by itself. In fact, the same November 2012 treatment record and February 2014 VA examination report reflect that any ideation was in the past given that he denied current suicidal or homicidal ideation. Moreover, an August 2014 treatment record, a December 2016 treatment record, and the report from the February 2019 VA examination all also reflect that he denied suicidal or suicidal and homicidal ideation. 

Additionally, when viewed in conjunction with the mental status exams documented by the Veteran’s treatment records, the evidence again shows that his acquired psychiatric disability has not caused total occupational and social impairment. Indeed, the mental status examination documented by the December 2016 treatment record reflects that he was alert and attentive, oriented to time, location, and situation, had appropriate grooming, was cooperative and reasonable, had speech of a normal rate and rhythm that was coherent, had no perceptual disturbances, had normal and coherent thought processes, had good insight, had judgment within normal limits, and no unusual thought content. Additionally, a March 2019 private treatment record reflects that a private physician determined that he had multiple acquired psychiatric disabilities manifested by symptoms of depression, anxiety, decreased concentration, short-term memory loss, nightmares, sleep disturbances, angry outbursts, irritability, intrusive thoughts, hypervigilance, isolation, crowd avoidance, some paranoia, startle response, a lack of energy and motivation, sadness, helplessness, and passive suicidal ideations. However, the symptoms do not show total occupational and social impairment, particularly when viewed together with the other clinical evidence discussed herein. Thus, the treatment records fail to show any symptoms consistent with the criteria for a 100 percent rating and a holistic analysis fails to show that his acquired psychiatric disability has caused total occupational and social impairment.

Next, although the general rating formula provides specific examples of symptoms that may result from various acquired psychiatric disabilities, the Board emphasizes that its analysis should not be limited to only these symptoms and should include consideration of any other relevant criteria outside of the rating code in order to determine the level of occupational and social impairment. Mauerhan v. Principi, 16 Vet. App. 436, 444 (2002). Thus, the Board has also considered the extent to which there are other indications of total occupational and social impairment, such as gross impairment of the thought process or communication, persistent delusions or hallucinations, grossly inappropriate behavior, persistent danger of hurting self or others, intermittent inability to perform the activities of daily living, disorientation to time or place, and memory loss for names of close relatives, own occupation, or own name.

In this regard, it is clear that the Veteran’s acquired psychiatric disability has some impact on his social and occupational functioning, exemplified by his strained relationship with his three children and the fact that he has been divorced three times. Nevertheless, the evidence does not indicate that a disability rating in excess of 70 percent is warranted. Given that the evidence shows that he helped his 95-year-old mother and has a good relationship with his sister, the evidence does not show that his acquired psychiatric disability has caused total social impairment. Therefore, the Veteran does not display total social and occupational impairment even when factoring in other relevant criteria outside of the rating code. See Mauerhan v. Principi, 16 Vet. App. 436, 444 (2002).

In considering the appropriate disability rating, the Board has also considered the statements from the Veteran that his acquired psychiatric disability is worse than the rating he currently receives. In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990).

Competency of evidence differs from weight and credibility. Although the Veteran is competent to report symptoms because this requires only personal knowledge as it comes to him through his senses, he is not competent to identify a specific level of disability of his acquired psychiatric disability according to the appropriate diagnostic codes. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) (“although interest may affect the credibility of testimony, it does not affect competency to testify”). 

On the other hand, such competent evidence concerning the nature and extent of the Veteran’s acquired psychiatric disability has been provided by the medical personnel who have examined him during the current appeal and who have rendered pertinent opinions in conjunction with their evaluations. The medical findings of the August 2014 VA and the February 2019 examiners (as provided in the examination reports) and the physician that performed mental status evaluations directly address the criteria under which this disability is evaluated. Specifically, while the Veteran has asserted that the symptoms of his acquired psychiatric disability warrant a rating for total occupational and social impairment, the impact of the symptoms of his acquired psychiatric disability was discussed and addressed by the August 2014 VA and the February 2019 examiners, and the Board finds their assessments of greater probative weight.

By virtue of the foregoing, the Board concludes that a disability rating in excess of 70 percent for the Veteran’s acquired psychiatric disability is not warranted.

TDIU

2. Entitlement to TDIU

The Veteran contends that TDIU is warranted because his acquired psychiatric disability has caused him to experience difficulty remembering tasks and debilitating anxiety, and to have outbursts at coworkers. He also contends that TDIU is warranted because the medication that he takes to treat his acquired psychiatric disability makes him drowsy and inhibits his ability to work.

Total disability is considered to exist when there is any impairment which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 3.340(a)(1). The Board must consider if the Veteran can obtain employment more than marginal income (outside of a protected environment) as determined by the U.S. Department of Commerce to be the poverty threshold for one person. See Ray v. Wilkie, 2019 U.S. App. Vet. Claims LEXIS 386 (Mar. 14, 2019). 

Further, the Board should also consider whether given the Veteran’s history, education, skill, and training, in conjunction with the Veteran’s physical ability and mental ability, can perform the type of activities required by the occupation at issue. See Id. Moreover, the Board must evaluate whether there are circumstances in the Veteran’s case, apart from any non-service-connected conditions and advancing age, which would justify TDIU. 38 C.F.R. §§ 3.341(a), 4.19; See Van Hoose v. Brown, 4 Vet. App. 361 (1993); see also Hodges v. Brown, 5 Vet. App. 375 (1993); Blackburn v. Brown, 4 Vet. App. 395 (1993). The Veteran’s service-connected disabilities, employment history, educational and vocational attainment, and all other factors having a bearing on the issue must be addressed. 38 C.F.R. § 4.16(b). 

A total disability rating for compensation purposes may be assigned on the basis of “individual unemployability,” or when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. In such an instance, if there is only one such disability, it must be rated at 60 percent or more; if there are two or more disabilities, at least one disability must be rated at 40 percent or more, and sufficient additional disability must bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a). 

If a veteran fails to meet the threshold minimum percentage standards enunciated in 38 C.F.R. § 4.16(a), rating boards should refer to the Director of Compensation and Pension Service for extra-schedular consideration all cases where the veteran is unable to secure or follow a substantially gainful occupation by reason of service-connected disability. 38 C.F.R. § 4.16(b); see also Fanning v. Brown, 4 Vet. App. 225 (1993).

Thus, the Board must evaluate whether there are circumstances in the Veteran’s case, apart from any non-service-connected conditions and advancing age, which would justify TDIU. 38 C.F.R. §§ 3.341(a), 4.19; see also Van Hoose v. Brown, 4 Vet. App. 361 (1993); see also Hodges v. Brown, 5 Vet. App. 375 (1993); Blackburn v. Brown, 4 Vet. App. 395 (1993). The Veteran’s service-connected disabilities, employment history, educational and vocational attainment, and all other factors having a bearing on the issue must be addressed. 38 C.F.R. § 4.16(b). The veteran’s service-connected disabilities, alone, must be sufficiently severe to produce unemployability. Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993).

After a review of the evidence of record, the Board determines that TDIU is not warranted because the Veteran’s service-connected disabilities do not prevent him from securing or following a substantially gainful occupation.

As a threshold matter, the Board notes that the Veteran has met the schedular requirements for TDIU throughout the period on appeal. The Veteran’s service-connected acquired psychiatric disability is rated as 70 percent disabling (effective September 2013), bilateral hearing loss is rated as 30 percent disabling (effective July 2010), and tinnitus is rated as 10 percent disabling (effective July 2010), for a total combined rating of 80 percent. Moreover, given that the Veteran’s 70 percent disability rating assigned to his acquired psychiatric disability was effective September 2013, he has had a single disability rated at least 60 percent during the entire period on appeal.

Notwithstanding that the Veteran has met the schedular requirements for TDIU throughout the period on appeal, TDIU is not warranted because the Veteran’s service-connected disabilities do not prevent him from securing or following a substantially gainful occupation. See 38 C.F.R. § 4.16(b).

Specifically, the Board finds that the evidence does not support the Veteran’s principal contention that his acquired psychiatric disability prevents him from securing or following a substantially gainful occupation. The Board places significant probative weight on the reports from the August 2014 and February 2019 VA examinations. Neither examiner opined that his acquired psychiatric disability caused total occupational impairment and, in fact, the August 2014 VA examiner opined that it caused only occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, and the February 2019 VA examiner opined that the Veteran had no job related difficulties secondary to his acquired psychiatric disability, and stated that the symptoms of his acquired psychiatric disability do not significantly interfere with occupational or social functioning. Importantly, the examiner also observed that the Veteran was casually dressed and neatly groomed and had an unremarkable gait, posture, eye contact, and psychomotor activity, and that he exhibited a broad affect that was appropriately reactive and exhibited a logical and coherent stream of thought. Thus, the Board finds the symptoms observed by the examiners in the reports from the August 2014 and February 2019 VA examinations, together with opinions of the examiners, do not indicate or even suggest that the Veteran’s service-connected acquired psychiatric disability prevents him from securing or following a substantially gainful occupation.

Additionally, the Veteran’s treatment records do not reflect that his service-connected acquired psychiatric disability prevents him from securing or following a substantially gainful occupation. As set forth above, a December 2016 treatment record reflects that he was alert and attentive, oriented to time, location, and situation, had appropriate grooming, was cooperative and reasonable, had speech of a normal rate and rhythm that was coherent, had no perceptual disturbances, had normal and coherent thought processes, had good insight, had judgment within normal limits, and no unusual thought content. The observations fail to show that his acquired psychiatric disability prevents him from securing or following a substantially gainful occupation. 

Further, the evidence does not demonstrate that the Veteran’s service-connected bilateral hearing loss or tinnitus prevent him from securing or following a substantially gainful occupation. Here, the report from the September 2019 VA examination reflects that he reported that his bilateral hearing loss causes functional impact by requiring him to have a high volume to watch television, making it difficult to hear his wife and grandchildren, and preventing him from hearing people at work when asked to perform a task, and his tinnitus prevents him from hearing due to the ringing in his ears. However, the examiner did not opine or otherwise indicate that his bilateral hearing loss and tinnitus would prevent him from securing or following a substantially gainful occupation. Moreover, no treatment records reflect that any physician has opined that his bilateral hearing loss and tinnitus prevent him from working. Thus, the evidence fails to show that his bilateral hearing loss and tinnitus prevent him from securing or following a substantially gainful occupation. 

The Board acknowledges that the Veteran submitted a June 2020 employability evaluation by a certified vocational rehabilitation counselor, which reflects that the counselor opined that the Veteran has been considered unemployable since September 6, 2013 and remains unemployable. In support of that opinion, the counselor relied principally on the symptoms of his acquired psychiatric disability and indicated that the fact that he last worked in 2009, experiences anxiety, memory and concentration issues, isolative behaviors, depression, anger management issues, and past drug and alcohol use stand in opposition to his readiness to work. 

Although the counselor’s opinion supports the Veteran’s claim that he is entitled to TDIU, the Board finds that it is entitled to less probative weight than the other medical evidence of record, particularly the reports from the August 2014 and February 2019 VA examinations, where the examiners did not find that his acquired psychiatric disability caused total occupational impairment or that it impacted his ability to work. In fact, as noted above, the February 2019 VA examiner opined that the Veteran had no job-related difficulties secondary to his acquired psychiatric disability. Thus, the Board finds that the August 2014 and February 2019 VA examination reports are entitled to greater probative weight and the June 2020 opinion by the counselor.

The Board also notes that the Veteran is a high school graduate who completed two years of college. The evidence also shows that after service, he worked for a major airline as a cargo foreman for 16 years after service. Thus, the Board finds that the evidence concerning his education and training, in conjunction with the medical evidence, shows that his service-connected disabilities do not prevent him from securing or following a substantially gainful occupation.

Moreover, the Board finds that the clinical evidence is sufficient for the Board to make its own conclusions. Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2013) (applicable regulations place responsibility for the ultimate TDIU determination on the VA, not a medical examiner). In this regard, the Board also notes that despite the Veteran’s contentions, the most probative evidence, including the reports from the August 2014, February 2019, and September 2019 VA examinations, does not support a finding that he is entitled to TDIU.

By virtue of the foregoing, the Veteran’s TDIU claim is denied. See Owens v. Brown, 7 Vet. App. 429, 433 (1995).

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.

 

 

B.T. KNOPE

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board M. Crosnicker, Associate Counsel